Marshall, C. J.
 

 For the purposes of this discussion we shall assume that the driver of the truck employed by the city and engaged in hauling the cinders was negligent and that his negligence was the proximate cause of the injuries sustained by Arbenz, and that Arbenz was himself free from negligence contributing thereto. We shall discuss this case wholly and solely upon the question of the character of the service then being rendered for the city by its agents and servants, and whether they were then engaged in the performance of a public and governmental function.
 

 This court is for the present committed to the doctrine that there is no liability on the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function. The nonliability for governmental functions is placed upon the ground that the state is sovereign, that the sovereign cannot be sued without its consent, and that the municipality is the mere agent of the state and therefore cannot be sued unless the state gives its consent by legislation. Prior to 1912 the state of Ohio was entirely immune from judgments upon any ground, and although the people at that time made provision by amendment to Section 16 of the Bill of Rights, whereby suits might be brought against the state, the provision
 
 *284
 
 was not self-executing, and required legislation, which has never been enacted.
 

 The court is equally committed to the doctrine that if the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable.
 

 These questions have engaged the attention of this court numerous times in recent years, and except for the case of
 
 Fowler, Admx.,
 
 v.
 
 City of Cleveland,
 
 100 Ohio St., 158, 126 N. E., 72, 9 A. L. R., 131, later overruled by
 
 Aldrich
 
 v.
 
 City of Youngstown,
 
 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497, this court has consistently adhered to the distinction between governmental and proprietary functions. The facts in the instant case being within narrow range, and it being clearly shown that at the time of the collision between the automobile of Arbenz and the truck owned and operated by the city the two autos were on Bowman street, and that the truck was in the process of being turned into Lincoln street, where the cinders then carried by the truck were intended for the improvement of Lincoln street, it only remains to determine whether such a municipal operation is governmental.
 

 First of all, let us ascertain the tests whereby these distinctions are made. In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property,
 
 *285
 
 it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself. If, on the other hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens, for which the city is directly compensated by levying assessments upon property, or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts, the function is private and proprietary.
 

 Another familiar test is whether the act is for the common good of all the people of the state, or whether it relates to special corporate benefit or profit. In the former class may be mentioned the police, fire, and health departments, and in the latter class utilities to supply water, light, and public markets. Authorities may be found in abundance to establish the immunity from liability in the former class of cases, and to establish the liability in the latter class of cases. There is, however, a dearth of authority upon the question whether improvement of streets belongs to the one class or the other.
 

 Inasmuch as the controversy must turn in its last analysis upon the character of a street and the governmental obligation to maintain it, it becomes necessary to resort to a discussion of the fundamentals and an inquiry into the origin and
 
 *286
 
 nature of public ways. A highway is not necessarily and always a street, but a street is necessarily and always a highway. Highways are necessary adjuncts of society and date back to ancient periods. In English common law they were called the King’s highways, leading to all parts of the realm. By both the common law and the civil law, all classes of men of whatever rank or dignity were required as a part of the duty owing to the sovereign to aid in the repair and improvement of roads. The care of the roads was imposed upon the parishes by a statute of 22 Henry VIII (1 Eng. Stats., Revised Ed., 387, 391), and by another statute a parish might be indicted for neglect of this duty. Prom the earliest times surveyors of highways have been chosen as public officials to discharge the duty of maintaining and repairing roads. The reasons which caused highways to have a public character and to become the subject-matter of governmental care in ancient times have even greater force in modern times because of the enormous increase of travel and therefore the need of improved facilities for travel. Property has but little value unless it is accessible to a street or highway. It is one of the essential characteristics of a highway that it is for the free use of every member of the commonwealth, and all persons, including abutting owners, are forbidden to limit or restrict its use for purposes of travel, except that its use for public utility may be regulated.
 

 The state of Ohio has always recognized its obligation to keep the public ways open, and has delegated that duty to municipalities so far as streets and alleys within municipalities are concerned, and,
 
 *287
 
 further recognizing the public character of that obligation, has enjoined by Section 3714, General Code, upon municipalities an obligation to keep them open, in repair, and free from nuisance. This duty was for the first time imposed by legislation on May 3, 1852 (50 Ohio Laws, p. 244, Section 63), in practically the identical language in which that obligation is now couched in Section 3714, General Code. By that enactment the Legislature of Ohio has removed all doubt as to the public character of streets and alleys within municipalities, and by the same token it has become firmly established that the maintenance of streets, alleys, and other highways is the performance of a governmental function. By virtue of Section 3714 the duty has been enjoined upon municipalities to keep streets and alleys open, in repair, and free from nuisance, and it follows from that that they may be made to respond in damages for a failure so to do. The liability thus imposed by that statute is in derogation of the common law and therefore must be strictly construed. The liability having only been imposed for a failure to keep streets in repair, the provisions of that section cannot be by implication or interpretation extended to make the municipality liable for the negligence of its servants while engaged in the act of making improvements to its streets and alleys.
 

 Numerous cases have been decided and reported by this court holding municipalities responsible for damages caused by defects in streets, but this court has not in any case declared municipalities responsible for the negligence of their, agents and servants while engaged in making repairs and
 
 *288
 
 improvements to streets. In
 
 City of Dayton
 
 v.
 
 Pease,
 
 4 Ohio St., 80, this court held the city of Dayton responsible in a case where a bridge erected by the city of Dayton had collapsed and fallen into the canal, thereby damming up the water and doing injury to the owner of a mill. It is difficult to ascertain from that case whether the damages were awarded because of a condition in a street or because of negligence in the performance of the duty of constructing a bridge. Judge Ranney wrote the opinion in that case and entered into an elaborate discussion of the distinctions between sovereign and corporate duties, and then, without discussion of. reasons, declared the liability of municipalities in the matter of construction, repair, and maintenance of streets, holding that the same constituted a private and proprietary function of the city. If this case should be accepted as a binding authority, the judgment of the Court of Appeals would have to be affirmed. There are several reasons why it cannot be accepted as a binding authority. There is much in the opinion of Judge Ranney which materially weakens his declaration that the construction, repair, and maintenance of streets is a private and proprietary function. The judgment entered in that case might well have been correct on the theory that the damage was caused by the defective condition of the street itself. It must further be borne in mind that the controversy in that case originated on October 30, 1851, while Section 3714 (50 Ohio Laws, p. 244), was enacted May 3, 1852.
 

 A number of the former decisions of this court have been cited in the briefs of counsel for the re
 
 *289
 
 spective parties, but none of those cases involves facts which bring them within the range of the controversy in the instant case. • In
 
 City of Dayton
 
 v.
 
 Glaser,
 
 76 Ohio St., 471, 81 N. E., 991, it is stated in the opinion of Judge Summers that the duty to maintain streets is governmental. That pronouncement was entirely pertinent to the facts of that controversy, but it was an action to recover for damages caused by a defect in the street itself. That case cannot, therefore, be helpful. On the other hand, in the case of
 
 City of Circleville
 
 v.
 
 Sohn,
 
 59 Ohio St., 285, 52 N. E., 788, 69 Am. St. Rep., 777, the court declared that the duty to keep a street open is ministerial and mandatory. That declaration was also made in an action to recover for damages caused by a defect in the street itself. The other citations of decisions of this court are without value because of the peculiar facts upon which the decisions were declared. Counsel have not cited any case, neither have we found any former decision of this court, which involves liability for damages occasioned by the agents and servants of a municipality while in the act of making street improvements. We have further been cited to many cases decided by other jurisdictions, but upon examination of those authorities it is found that nearly all of them relate to conditions in the streets, and were for recovery of damages resulting from defects in the streets themselves. The following authorities in favor of the responsibility of the city are applicable and in point:
 
 Hewitt
 
 v.
 
 City of Seattle,
 
 62 Wash., 377, 113 P., 1084, 32 L. R. A. (N. S.), 632;
 
 Town of Colorado City
 
 v.
 
 Liafe,
 
 28 Colo., 468, 65 P., 630;
 
 McMahon
 
 v.
 
 Dubuque,
 
 107 Iowa,
 
 *290
 
 62, 77 N. W., 517, 70 Am. St. Rep., 143. On the other hand we find numerous authorities which hold municipalities not liable for the negligence of their servants while engaged in the act of making improvements to streets.
 
 Bates
 
 v.
 
 Village of Rutland,
 
 62 Vt., 178, 20 A., 278, 9 L. R. A., 363, 22 Am. St. Rep., 95;
 
 Barney
 
 v.
 
 City of Lowell,
 
 98 Mass., 570;
 
 Taggart, Admx.,
 
 v.
 
 City of Fall River,
 
 170 Mass., 325, 49 N. E., 622;
 
 Hennessey
 
 v.
 
 City of New Bedford,
 
 153 Mass., 260, 26 N. E., 999;
 
 Wakefield
 
 v.
 
 Newport,
 
 62 N. H., 624.
 

 By the weight of authority, as well as upon principle, we have reached the conclusion that streets and highways are public and governmental institutions, that in the absence of statutes there would be no liability for failure to maintain them, that it is only by reason of statutes that municipalities have been held responsible in damages for injuries caused by defects in streets, and that this statutory liability by its terms extends only to damages caused by defects in the streets themselves, and does not extend to the negligence of the agents and servants of the city while in the act of making repairs and improvements.
 

 The judgment of the Court of Appeals will therefore be reversed, and the judgment of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Day, Allen, Kinkade, Robinson, Jones and Matthias, JJ., concur.