CITY OF HAMILTON *v.* DILLEY.

(Decided July 31, 1928.)

*Mr. L. J. Ziliox,* for plaintiff in error.
*Messrs. Egan & Delscamp* and *Messrs. Andrews, Andrews & Rogers,* for defendant in error.

MILLS, J.   The city of Hamilton prosecutes error from a judgment for $1,000, rendered by the court of common pleas in favor of Anna L. Dilley, who was plaintiff below.

The original action was filed in the court of common pleas, praying damages for personal injuries.

The petition alleged that, about 1 o'clock in the night of November 14, 1926, Miss Dilley, while a passenger in an automobile driven eastwardly at a lawful rate of speed along High street, a main public highway in the city of Hamilton, was injured by the collision between said moving automobile and an unlighted obstruction which the city had caused to be erected in the traveled portion of the right side of said highway. The obstruction was described as a raised platform about one foot high, with a concrete post about five feet high rising from its westerly end.

The negligence charged against the city was the erection and maintenance by it of "said concrete obstruction as a barrier in the pathway of the traveled portion of said highway without warning signs or lights of any character whatsoever * * * to indicate to the operators of approaching automobiles the presence of said pillar or post, and of said raised platform." And it is alleged that at the time of said accident the street was "dimly lighted."

The petition further averred that the plaintiff, at the time of the accident, was unfamiliar with the location of the obstruction and had no knowledge thereof.

The answer of the city denied all the material allegations of the petition, and charged sole negligence on the part of the driver of the automobile.

Plaintiff's reply traversed the allegations of the answer.

At the trial it was developed that on the night in question, while the roadster automobile of Kennard Brown, with Miss Dilley as a passenger, was being driven by its owner eastwardly in High street, at a rate of speed less than 15 miles an hour, it ran against the structure complained of in the petition, thereby injuring Miss Dilley, who was unaware of its existence and was unable to see it in time to prevent the collision. Miss Dilley was a guest in the car, and no attempt is made to impute negligence to her.

There is evidence tending to show that the street was, at the time, dimly lighted.

The structure consisted of a concrete post, about 5 feet high, arising from the western-most end of the concrete platform. The platform was 40 feet long,

5 feet wide, and 6 inches high. Both post and platform were of the original gray color of the natural concrete, and bore neither signs nor lights. They had been designed by the director of public safety of the city, who had caused them to be erected at that place by an independent contractor. The purpose of the structure was to serve as a "loading platform," for the use and safety of passengers intending to board street cars at that point.

The design called for the installation by the city of a warning light at the top of the post, where it was in fact installed about 10 days after the accident; but no light had been installed at the time of the accident, although the post and platform had been completely constructed about four weeks prior thereto.

There is no evidence that the independent contractor was required, by either contract or ordinance, to display any warning lights on the structure; but it is in evidence that for about three weeks after the erection of the structure the director of public safety had caused to be regularly displayed thereon at night four red lanterns—a practice which he had, however, discontinued three or four nights prior to the accident. It is in evidence also that the plan of the director of public safety called for the post and platform to be painted. This painting had not been done at the time of the accident; neither does the record show who was expected to do it.

The jury returned a verdict for $1,000 against the city; and judgment was entered thereon.

It is claimed that the trial court erred: (1) In refusing to direct a verdict for the defendant at the close of the plaintiff's testimony; (2) in refusing to

direct a verdict for defendant at the close of all the testimony; (3) in giving certain special charges to the jury; and (4) in its general charge to the jury.

There is no contention here as to the extent of Miss Dilley's injuries, nor as to the jury's estimate of the proper compensation to be awarded therefor.

The city itself caused the post and platform to be constructed, and the city does not contend that it lacked actual as well as constructive notice of the exact condition and surroundings of the structure.

The specifications of error are all based solely upon the theory that the city cannot be held liable for injuries caused by collision with a structure placed by it in the public street for the purpose of protecting pedestrians against danger from passing vehicles. The argument advanced is that in erecting such a structure the municipality is exercising its police power. In effect, it is argued that the structure in question could not constitute a nuisance, for the sole reason that "it was erected under the police power of the city, and not its proprietary power." In support of this contention the city cites *Aldrich* v. *City of Youngstown,* 106 Ohio St., 342, 140 N. E., 164, 27 A. L. R., 1497; *City of Akron* v. *Butler,* 108 Ohio St., 122, 140 N. E., 324, and *City of Wooster* v. *Arbenz,* 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518.

The rights and duties of a municipality in the use and control of its streets are defined by Section 3714, General Code, which reads as follows: "Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets,

avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance."

The sole question here involved is as to the duties of a municipality under Section 3714.

The statutory requirement that municipalities shall "cause" the public streets and roads within their boundaries "to be kept open and in repair, and free from nuisance," has been in force in Ohio since the year 1852. 50 Ohio Laws, 244, Section 63; 66 Ohio Laws, 222, Section 439; 75 Ohio Laws, 388; 96 Ohio Laws, 31, Section 28; Section 3714, Ohio General Code of 1910. This requirement has been interpreted by our Supreme Court in many cases, among which may be cited *City of Ironton* v. *Kelley,* 38 Ohio St., 50, 52; *Village of Cardington* v. *Admr. of Fredericks,* 46 Ohio St., 442, 21 N. E., 766; *City of Circleville* v. *Sohn,* 59 Ohio St., 285, 52 N. E., 788; *City of Columbus* v. *Penrod,* 73 Ohio St., 209, 76 N. E., 826, 3 L. R. A. (N. S.), 386, 112 Am. St. Rep., 716.

In *City of Dayton* v. *Glaser,* 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N. S.), 916, the syllabus, by the court, reads: "A municipal corporation is charged with the duty of keeping its streets free from nuisance and in a reasonably safe condition for travel in the usual modes, but it is not an insurer of the safety of persons using them, and when they are in that condition it is not chargeable with negligence, although an accident happens in the use of the streets."

In *Gibbs* v. *Village of Girard,* 88 Ohio St., 34, 102 N. E., 299, the first proposition of the syllabus, by

the court, reads: "1. Municipalities are not insurers of the safety of their streets and sidewalks, but are required to exercise ordinary care in keeping their streets and sidewalks in a reasonably safe condition for public travel, and a failure of duty in this respect is negligence."

It is true that in *City of Wooster v. Arbenz, supra,* cited by counsel for the city, involving a case where the plaintiff was injured by the collision of his automobile with a truck owned by the city of Wooster, and operated by the city at the time for hauling material for the improvement of streets within the city, our Supreme Court held that the city was not liable, for the reason that "municipalities while engaged in the improvement of streets are engaged in the performance of a governmental function."

But the second and third propositions of the syllabus in the *Arbenz case* read as follows:

"2. Section 3714, General Code, imposes upon municipalities the obligation to keep streets, alleys, and other highways within the municipality open, in repair, and free from nuisance; the legislation imposing this duty is an exercise of the sovereignty of the state, and municipalities as creatures of the same sovereignty are subject to the liability which follows a failure to discharge that duty.

"3. The duties and obligations thus imposed are in derogation of the common law and must therefore be strictly construed, and the provisions of that legislation cannot by implication or interpretation be extended to make a municipality liable for the negligence of its servants while engaged in the act of making improvements to streets, unless such negligence relates to a condition of the street itself and

the damage is caused by a defective condition thereof."

In *Gibbs* v. *Village of Girard, supra,* in syllabus 4, the following proposition is laid down: "What is ordinary care, what is reasonable safety, and the like, are, in the first instance, usually questions for the determination of the jury under all the evidence and proper instructions by the court appropriate to the particular circumstances of each case and the issues thereof."

The negligence that gives rise to a municipality's liability for failure to exercise due care to keep its streets in a reasonably safe condition for travel may consist in the municipality's failure to exercise ordinary care to maintain warning lights or signs to warn travelers of the existence of an obstruction in an unlighted or dimly lighted street. 13 Ruling Case Law, title "Highways," sections 356, 361; *City of Columbus* v. *Penrod, supra; Cochran* v. *Public Service Electric Co.,* 97 N. J. Law, 480, 117 A., 620; *McKim* v. *City of Philadelphia,* 217 Pa., 243, 66 A., 340, 19 L. R. A. (N. S.), 506; note in 20 L. R. A. (N. S.), 671, 686; *Shields* v. *City of Cleveland,* 21 C. C. (N. S.), 257, 33 C. D., 338.

The instant case comes within the principle of *Village of Barnesville* v. *Ward,* 85 Ohio St., 1, 10, 96 N. E., 937, 40 L. R. A. (N. S.), 94, Ann. Cas., 1912D, 1234, wherein it was held that the fact that a municipality may maintain a barrier around a park strip to prevent pedestrians from going thereon does not authorize the maintenance of such a dangerous construction as would be a menace to the safety of a pedestrian exercising due care for his own safety in an attempt to cross over the same. In that case

the village was held liable in damages for injuries to a pedestrian, who, in the exercise of due care, was injured by the barrier.

This court in this case is not requested to declare, and it cannot from the evidence determine, that the barrier in question was not at the time of the accident an obstruction that was dangerous to the safety of persons traveling by automobile.

We are of the opinion that there was in this case some evidence tending to prove every essential fact necessary to entitle the plaintiff to recover, including evidence of negligence on the part of the city, and that the issue presented was one that required determination by the jury. *Gibbs* v. *Village of Girard, supra; Pope, Admx.,* v. *Mudge,* 108 Ohio St., 192, 140 N. E., 501. The court, therefore, did not err in refusing to direct a verdict for the defendant.

For the reasons already given, we are of the opinion that there was no error in special charge No. 1, which reads as follows: "The city of Hamilton was on November 14, 1926, required by law to keep its streets free from nuisance, and if you find that the loading platform described in this case, on account of its condition at that time, was in fact a nuisance, and that the proximate cause of the injuries suffered by the plaintiff was the failure of the city to remove said nuisance, your verdict should be for the plaintiff."

Complaint is made as to special charges No. 2 and No. 3, which were as follows:

"The plaintiff is entitled to recover if you find the proximate cause of the accident was the city's failure to keep its streets free from nuisance, even though some negligence on the part of Kennard Brown may have contributed to the injury."

"Even if Kennard Brown was guilty of some negligence in connection with the accident sued upon in this case, the plaintiff is not charged therewith, and she may recover damages for the loss she sustained. notwithstanding any negligence of Kennard Brown, if you find the city violated its duty in connection with the maintenance, supervision and control of said street, and the same was the proximate cause of the injury suffered by the plaintiff."

The city did not plead and does not claim contributory negligence on the part of the plaintiff. The doctrine of imputed negligence does not obtain in Ohio. *Pennsylvania Rd. Co.* v. *Lindahl, Admr.*, 111 Ohio St., 502, 511, 146 N. E., 71; *Cincinnati Street Ry. Co.* v. *Wright, Admr.*, 54 Ohio St., 181, 43 N. E., 688, 32 L. R. A., 340; *Toledo Railways & Light Co.* v. *Mayers,* 93 Ohio St., 304, 112 N. E., 1014.

The doctrine of concurrent negligence that is stated in these two special charges is supported by the. first proposition of the syllabus of the court in *City of Piqua* v. *Morris,* 98 Ohio St., 42, 120 N. E., 300, 7 A. L. R., 129, which reads as follows. "The proximate cause of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened. The fact that some other cause concurred with the negligence of a defendant in producing an injury, does not relieve him from liability unless it is shown such other cause would have produced the injury independently of defendant's negligence."

We hold, therefore, that special charges Nos. 2 and 3 were not erroneous.

The only complaint made regarding the general

charge is that it states the same rules of law as those laid down in special charges 1, 2, and 3, which we have held to be not erroneous.

For the reasons given, the judgment of the court of common pleas will be affirmed.

*Judgment affirmed.*

HAMILTON, P. J., concurs.

CUSHING, J., dissenting. I am unable to agree with my associates either as to the application of the authorities cited to the facts in this case, or in the conclusion reached. They cite and stress *City of Dayton* v. *Glaser,* 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N. S. ), 916, and *Gibbs* v. *Village of Girard,* 88 Ohio St., 34, 102 N. E., 299.

In *City of Dayton* v. *Glaser,* the question upon which the court passed, and to which it applied the law, grew out of the fact that the municipality had allowed the street to become out of repair to such an extent that there were many holes from four to five inches deep in the street, and the injury was due to these holes.

In *Gibbs* v. *Village of Girard,* the village had allowed a sewer under the sidewalk to undermine the same and cause a drop or fall in the sidewalk, so that there was an offset of about or a little more than four inches, and the village allowed this condition to remain for several years. It was as to these facts that the court applied the law.

In the case at bar the city adopted a plan of placing loading platforms in the street near the street car tracks, for the benefit of the public. The part of the public using the street cars, and crossing the

streets, would be in a place of safety when on such platforms. The part of the public using automobiles could drive on either side of the platform in the ordinary way without delay. This was not a case of neglect on the part of the city, but it was the adoption of a plan for the convenience and safety of the general public. There was no showing that the street was not in a condition for use for travel in the ordinary way, and, if so, it was free from nuisance. *City of Cincinnati* v. *Fleischer, Admr.,* 63 Ohio St., 229, 58 N. E., 568; *City of Troy* v. *Brady,* 67 Ohio St., 65, 65 N. E., 616.

In *City of Jacksonville* v. *Bell,* 93 Fla., 936, 112 So., 885, 53 A. L. R., 163, it was held: "A municipality cannot be held liable for maintaining an obstruction in the street, which obstruction is so placed in the street for the purpose of rendering that place safer for the public in general than it would be without such obstruction, and which is for the purpose of protecting the life, limbs, and property of that portion of the general public who must use such place for the lawful purpose of entering and departing from street cars."

In the case of *District of Columbia* v. *Manning,* 57 App., D. C., 156, 18 F.(2d), 806, 53 A. L. R., 167, the Court of Appeals of the District of Columbia held that where a municipality used safety zones, marked with iron markers 18 inches in diameter, painted white, but without lights, and in accordance with a uniform plan, which devices were placed in the street for the protection of the general public, and as an aid to the regulation of traffic, wide latitude should be afforded the authorities in devising and establishing safety zones. The first

paragraph of the syllabus of that case is: "The placing by a city of iron markers at the outside corners of a safety zone at a car stop, in accordance with a uniform plan throughout the city, does not constitute negligence as matter of law, or render the municipality liable to a pedestrian falling over a marker to her injury."

The principal contention in the case at bar is that the city failed to maintain a light on the structure. It is true that the municipality acts by authority from the state. The General Assembly of Ohio, in defining the general powers of municipalities, Section 3829, General Code, states that a municipality has power to establish and care for streets, and, among other things, to light them.

There was no ordinance pleaded or proved requiring the city to light the streets, or to maintain a light on this loading platform.

The evidence discloses that there was a thousand candle power arc light burning about 60 or 70 feet from the point in question, and that there were cluster lights along the side of the street. The testimony is conflicting as to whether or not these cluster lights were burning.

The arc light above referred to was on an arm suspended over the street, and whether the cluster lights were burning or not there is no dispute from the record but that there was illumination at the point in question.

Counsel for defendant in error cite the case of *City of Circleville* v. *Sohn,* 59 Ohio St., 285, 52 N. E., 788. In that case the sidewalk had a slope of at least 2 feet in 16 feet and the city allowed it to remain in that condition. It was charged that the

stones were rough and uneven, and that said slope was dangerous to persons traveling on the walk when the same was covered with ice and snow. It was also charged that the sidewalk where it crossed the alley was constructed in a dangerous and defective manner. The facts to which the court applied the law in that case are different from the facts in the case at bar, and I do not consider it an authority in this case.

I am of opinion that the loading platform was planned and designed by the authorities of the city of Hamilton for the benefit, safety, and convenience of the general public; that the street was open for travel in the ordinary way; that there was no proof that the municipality was required to place a warning light on said post and platform; that the street in the vicinity was illuminated; and that there was an entire failure of proof that the municipality was guilty of any violation of a duty that it owed to a passenger in an automobile. I am further of the opinion that the judgment of the trial court should be reversed, set aside, and held for naught, and that judgment should be entered here for the plaintiff in error.