## NIBLOCK v. SALT LAKE CITY.

No. 6189.  Decided March 29, 1941.  (111 P. 2d 800.)

Rehearing Denied November 12, 1941.

574

*Bagley, Judd, Ray & Nebeker*, of Salt Lake City, for appellant.

*Clarence M. Beck* and *Homer Holmgren*, both of Salt Lake City, for respondent.

McDONOUGH, Justice.

Appellant Salt Lake City has appealed from a judgment of the trial court based on a verdict rendered by a jury in favor of respondent in a suit by the latter against the city for damages on account of personal injuries alleged to have been suffered when a truck driven by an employee of the city ran into an automobile owned and operated by respondent.

The accident occurred near the intersection of Twenty-First South Street and Eleventh East Street in Salt Lake City. A heavily loaded truck driven by an employee of the city bumped into the rear of respondent's automobile. Fol-

lowing the accident Niblock contacted his insurance carrier who directed him to see a Mr. Harmon concerning the damage to his automobile. Mr. Harmon authorized Niblock to have his car repaired at the Warburton Garage. Upon calling for the car respondent was told by Mr. Warburton to sign a paper so that the latter could collect for fixing the automobile. Respondent did so and took his car. Later he presented a claim to Salt Lake City for personal injuries alleged to have been received in the accident but the claim was denied. This action ensued.

Appellant's fifty-one assignments of error may be grouped under three general heads: (1) Those dealing with the question of whether an incorporated city in this state is in any case liable for its negligent act done in the course of repairing its streets as well as for its failure to keep its streets in a reasonably safe condition for travel; (2) those having reference to a "release" signed by respondent when he obtained his car from the garage, which release it is claimed relieves the city from any liability on account of personal injuries suffered by respondent; and (3) those relative to the court's instructions to the jury.

Raising the first question are the allegations of the complaint to the effect that the truck which ran into respondent's car was loaded with materials which were "being then and there transported by said defendant for its use in repairing certain of the defendant's streets and highways," and the evidence adduced in support thereof. As stated in respondent's brief,

"It is undisputed that the truck, at the time of the accident, was being driven by one of defendant's employees employed in the street department and was being used in repairing one of the city's streets."

It is generally recognized throughout this country and in England that in the absence of a statute a municipality is not liable for the negligent acts of its servants while they are engaged in performing a governmental function or duty. *Hewitt* v. *City of Seattle,* 62 Wash. 377, 113 P. 1084, 32 L. R. A., N. S., 632; *Hagerman* v. *City of*

*Seattle,* 189 Wash. 694, 66 P. 2d 1152, 110 A. L. R. 1110, 1117; *City of Tallahassee* v. *Kaufman,* 87 Fla. 119, 100 So. 150; *Jones* v. *City of Sioux City,* 185 Iowa 1178, 170 N. W. 445, 10 A. L. R. 474, 480; *City of Oklahoma City* v. *Foster,* 118 Okl. 120, 247 P. 80, 47 A. L. R. 822, 829. And this court has many times adhered to this rule. *Gillmor* v. *Salt Lake City,* 32 Utah 180, 89 P. 714, 12 L. R. A., N. S., 537, 13 Ann. Cas. 1016; *Sehy* v. *Salt Lake City,* 41 Utah 535, 126 P. 691, 42 L. R. A., N. S., 915; *Alder* v. *Salt Lake City,* 64 Utah 568, 231 P. 1102; *Rollow* v. *Ogden City,* 66 Utah 475, 476, 243 P. 791.

The authorities, however, are not harmonious as to whether the duty to construct and repair streets and highways is a governmental or a proprietary duty. In those jurisdictions where it has been held that the duty to repair or construct streets is a governmental one, a municipality, absent a statutorily imposed liability, is not liable for failure to repair its streets or for negligent repairs or construction.

After acknowledging the split of authority with respect to the nature of a municipality's duty to construct or repair its streets, respondent states in his brief:

"Coming to the question of the liability of a city for the negligence of its servants while engaged in repairing the streets, it will be seen that any conflict in the authorities on this question arises out of the way in which they answer the main question, namely, whether the duty to keep its streets in repair is a corporate or a governmental one. This proposition is clearly stated in the note in 6 L. R. A., N. S., 1090, which reads as follows:

"'It is apparent from an examination of these authorities that in the absence of statutory liability this conflict does not arise from any distinction between the liability of a municipality for injuries caused by a defective highway and those caused by the municipal employees while engaged in the construction or repair of the highway, but that these liabilities rest upon the same ground, namely, whether or not the construction and repair of highways constitute a public or governmental function, instead of a private or corporate function, and that the courts, in passing upon the liability of the municipality for injuries inflicted in the carrying on of the work of construction or repair divide in accordance with the manner in which this fundamen-

tal question has been determined in their respective jurisdictions. Thus in Colorado, where the construction and maintenance of highways is held to be a corporate, and not a public duty, the municipality is held liable for the negligent injury of a person engaged in digging gravel from a pit for use in repairing a highway. *Town of Colorado City* v. *Liafe*, 28 Colo. 468, 65 P. 630. And in *City of Denver* v. *Peterson*, 5 Colo. App. 41, 36 P. 1111, the municipality was held liable for injuries resulting from the frightening of a horse by a steam roller.' " Note to *Barree* v. *City of Cape Girardeau*, 197 Mo. 382, 95 S. W. 330, 6 L. R. A., N. S., 1090, 114 Am. St. Rep. 763. The authorities there cited support the text confined as it is to "the absence of statutory liability."

See, also, *Kippes* v. *City of Louisville*, 140 Ky. 423, 131 S. W. 184, 30 L. R. A., N. S., 1161; *Hewitt* v. *City of Seattle*, supra; *City of Birmingham* v. *Whitworth*, 218 Ala. 603, 119 So. 841; *Burke* v. *City of South Omaha*, 79 Neb. 793, 113 N. W. 241; *Colwell* v. *City of Waterbury*, 74 Conn. 568, 51 A. 530, 57 L. R. A. 218; *City of Akron* v. *Butler*, 108 Ohio St. 122, 140 N. E. 324; *Strickfaden* v. *Green Creek Highway Dist.*, 42 Idaho 738, 248 P. 456, 49 A. L. R. 1057.

This court is committed to the doctrine that the duty to repair or construct streets within its corporate limits is a governmental one and that in the absence of a statute no liability devolves on a municipality for the defective condition of its streets. *Hurley* v. *Town of Bingham*, ■ 63 Utah 589, 228 P. 213; *Hamilton* v. *Salt Lake City*, 99 Utah 362, 106 P. 2d 1028. As stated in *Hurley* v. *Town of Bingham*, supra [63 Utah 589, 228 P. 215]:

"The right to institute an action in this class of cases [injury caused by an obstruction] is purely statutory. It did not exist at common law, and therefore the conditions precedent fixed by the statute which confers the right must be complied with, or the action fails."

The provisions of our statutes which authorize a municipality to construct and repair its streets and which specify the manner in which claims should be presented against the city for its negilgent failure to perform its duty are as follows:

■

15-8-8, R. S. U. 1933: "They [boards of commissioners and city councils of cities] may lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets, alleys, avenues, boulevards, sidewalks, parks, airports and public grounds, and may vacate the same or parts thereof, by ordinance."

15-8-11, R. S. U. 1933: "They may regulate the use of streets, alleys, avenues, sidewalks, crosswalks, parks and public grounds, prevent and remove obstructions and encroachments thereon, and provide for the lighting, sprinkling and cleaning of the same."

15-7-76, R. S. U. 1933: "Every claim against a city or incorporated town for damages or injury, alleged to have been caused by the defective, unsafe, dangerous or obstructed condition of any street, alley, crosswalk, sidewalk, culvert or bridge of such city or town, or from the negligence of the city or town authorities in respect to any such street, alley, crosswalk, sidewalk, culvert or bridge, shall within thirty days after the happening of such injury or damage be presented to the board of commissioners or city council of such city, or board of trustees of such town * * * stating the particular time at which the injury happened, and designating and describing the particular place in which it occurred, and also particularly describing the cause and circumstances of the injury or damages, and stating, if known to claimant, the name of the person, firm or corporation, who created, brought about or maintained the defect, obstruction or condition causing such accident or injury * * *; such notice shall be sufficient in the particulars above specified to enable the officers of such city or town to find the place and cause of such injury from the description thereof given in the notice itself without extraneous inquiry * * *."

In the case of *Alder* v. *Salt Lake City*, supra, this court held that the defendant city was not liable for injuries sustained by plaintiff through collapse of a tier of seats erected in a public park. The nonliability was based on the principle that the maintenance of parks is a governmental function. Said the court [64 Utah 568, 231 P. 1103]:

"There is a well-recognized exception to the general rule of imunity in cases involving the maintenance and care of public streets, and it is generally held that municipalities are liable for negligence in failing to keep the avenues of public travel in safe condition and repair. It is argued that a similar exception should be made in the case of the maintenance of public parks, playgrounds, etc. The ex-

ception in the case of streets is founded upon public policy and expediency, and is recognized in this state by legislative act. Comp. Laws Utah 1917, § 816."

Section 816 referred to in the quotation is the "claim statute" cited above as Section 15-7-76, R. S. U. 1933. Whether the exception so defined be regarded as one engrafted on the rule by the court, or be referred to Sec. 15-8-8 and Sec. 15-8-11, quoted above, as forming the basis of the municipality's liability implied from the grant of governmental authority there conferred, the claim statute clearly delimits such liability. It is confined thereby to "damages or injury * * * caused by the defective, unsafe, dangerous or obstructed condition" of a street or from negligence of the city authorities with "respect to any such street."

Respondent insists that this last-quoted part of the statute clearly encompassed the negligence here involved. We are of the contrary opinion. "Such street" has reference to a street in a defective, unsafe, dangerous or obstructed condition. The liability in any case would be based on negligence. The obstructed condition of a street gives rise to no liability if the city has taken proper precautions. The erection of adequate barriers and warnings would usually fulfill the city's duty to the traveling public though the street be defective.

This construction of the phrase is definitely pointed to by the portion of the statute detailing the statements required in such claim. Claimant must therein state, if known to him, the name of the "person, firm, or corporation, who created, brought about or maintained the defect, obstruction or condition causing such * * * injury." The place where the injury occurred must be particularly described. The description must be sufficient to "enable the officers of such city or town to find the *place* and *cause* of such injury from the description thereof given * * * without extraneous inquiry." (Italics added.) The cause of an injury, in case of two colliding automobiles could not well be found by the officers merely from a description of

the place where the collision occurred, unless the place itself were the cause. Especially is this true if the officers made their investigation thirty days after the collision. This is true though one of the vehicles be laden at the time of collision with material to repair a street.

We have previously indicated the construction to be given the "claim statute" in several cases. In *Brown* v. *Salt Lake City*, 33 Utah 222, 93 P. 570, 573, 14 L. R. A., N. S., 619, 126 Am. St. Rep. 828, 14 Ann. Cas. 1004, we said:

"It will be observed the claims that require presentation are of two kinds: (1) Claims arising out of defective or obstructed streets, alleys, crosswalks, sidewalks, culverts or bridges, or for negligence of the city authorities with respect thereto. * * * *Those are limited to defects in, or the obstructed condition of, streets, alleys, crosswalks, sidewalks, culverts or bridges. All these pertain to places and things which the city is bound by law to maintain in a reasonably safe condition, and the statute makes it liable for a neglect of duty with respect thereto.*" (Italics added.)

And in *Morris* v. *Salt Lake City*, 35 Utah 474, 101 P. 373, 378, where the city was held liable for damages resulting from the negligent construction of a sidewalk, it was said:

"The doctrine that we invoke is generally applied where axcavations or other obstacles are placed in the streets by a contractor in making some improvements in a street, and where such excavations or obstacles are left unprotected and unguarded in consequence of which an injury results to a traveler or one lawfully using the stret. We can see no distinction, however, between the principle which is involved in such a case and the one at bar. *In either case the city and the contractor are not held liable because of doing the work, but because in doing it a danger is created which is negligently permitted to exist* by reason of which injuries and damages result to someone." (Italics added.)

The statutes, as we construe them, do not authorize recovery from a municipality for the negligence of its servants engaged in repairing or constructing streets, but only where there has been a failure on the part of the municipality to perform its duty to keep its

streets free from unsafe, dangerous, defective or obstructed conditions.

That a statute imposing liability for injuries resulting from defects or dangerous conditions in the way does not authorize recovery by one injured through the negligent operation of a vehicle or machine by one engaged in repair of a highway is the holding of a majority of the courts: *City of Wooster* v. *Arbenz*, 116 Ohio St. 281, 156 N. E. 210, 52 A. L. R. 518; *Kohake* v. *City of Cincinnati*, 59 Ohio App. 403, 18 N. E. 2d 501; *Connor* v. *City of Manchester*, 73 N. H. 233, 60 A. 436; *De Baere* v. *Town of Oconto*, 208 Wis. 377, 243 N. W. 221; *Wrighton* v. *City of Highland Park*, 236 Mich. 279, 210 N. W. 250; 25 Am. Jur. 399, 644.

In *City of Wooster* v. *Arbenz*, supra [116 Ohio St. 281, 156 N. E. 212, 52 A. L. R. 518], the court held: ∎

"By virtue of section 3714 the duty has been enjoined upon municipalities to keep streets and alleys open, in repair, and free from nuisance, and it follows from that that they may be made to respond in damages for a failure so to do. The liability thus imposed by that statute is in derogation of the common law and therefore must be strictly construed. The liability having only been imposed for a failure to .keep streets in repair, the provisions of that section cannot be by implication or interpretation extended to make the municipality liable for the negligence of its servants while engaged in the act of making improvements to its streets and alleys."

While the rule cited in the Arbenz case that statutes in derogation of the common law must be strictly construed has been abrogated in this state by express provision (Sec. 88-2-2, R. S. U. 1933), nevertheless if the liability imposed is limited to failure to keep in repair and unobstructed the provisions of the cited statute, viz.:

"The statutes establish the laws of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice."

preclude our extending the liability further than the clear intendment of the statute imposing it.

For a contrary holding to that in the Arbenz and other cases cited above, see the following Minnesota cases: *Ackeret* v. *City of Minneapolis,* 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D, 1111, Ann. Cas. 1916 E., 897; *Bojko* v. *City of Minneapolis,* 154 Minn. 167, 191 N. W. 399; *McCarthy* v. *City of St. Paul,* 201 Minn. 276, 276 N. W. 1; *McLeod* v. *City of Duluth,* 174 Minn. 184, 218 N. W. 892, 60 A. L. R. 96.

In view of our disposition of the first question presented on this appeal, it becomes unnecessary to decide the others. From what has been said it follows that the judgment of the trial court should be reversed and the cause remanded, with instruction to dismiss the complaint.

It is so ordered. Costs to appellant.

MOFFAT, C. J., and LARSON and PRATT, JJ., concur.

WOLFE, Justice (concurring).

I concur. In the case of *Husband* v. *Salt Lake City,* 92 Utah 449, 69 P. 2d 491, I expressed the opinion that municipal immunity for the negligence of its employees had been extended too far. The doctrine cannot be defended in any case on ethical grounds. The state should set the example by responding in damages for injury caused by the negligence of its servants while they are about its business. It follows then, that it should permit its courts to be opened to the inquiry as to whether there was such negligence and whether it proximately caused the plaintiff's injury.

Governmental immunity is granted on the old theory that "the king can do no wrong" or, on better circumstanced morality, that the sovereign by its very nature cannot be sued because the sovereignty implies something which cannot be reached by suit in and through the very agencies which the sovereign itself creates. One cannot bring into

court the creator of the court itself. But neither of these theories suffices in this modern day. See 23 Mich. L. Rev. 325; *Hoggard* v. *Richmond*, 172 Va. 145, 200 S. E. 610, 120 A. L. R. 1376.

Realistically speaking, the state should be free from the vexatious suits based on fictitious grounds which might spring into abundance were the immunity removed. Therefore, the matter of lifting immunity is, perhaps, properly the matter of legislation. But it behooves the courts judicially not to extend the doctrine. As stated in the concurring opinion in the Husband case, supra [92 Utah 449, 69 P. 2d 501]:

"I am in favor of restricting municipal immunity for the negligence of its employees while engaged in the city's business to that committed in the pursuit of actual protection of persons and property or preserving the peace of the community or some other police duty which it exercises as an agency of the state. The doctrine originated on the theory that the city was an agency of the state in its function of preserving the peace and protecting persons and property, and since the state could not be sued for negligence of its employees in performing such functions, neither should the agency be required to respond when its servant so engaged was guilty of negligence. I have some question about the soundness of the original doctrine, but as then restricted, it did not produce the unfairness which now ensues because of the greater and greater expansion of municipal activities construed to be for governmental purposes."

Logically, if a city's immunity is based on the fact that it exercised sovereign powers, as pointed out in 120 A. L. R. 1376, at p. 1377, the doctrine "constitutes an impediment to suing the sovereign at all, and would apply as well to proprietary functions as to those of a governmental character."

Logically, also, there is no reason why a line should be drawn between some governmental functions and others. But at least it has the virtue of mitigating the injustices of the anachronous doctrine of governmental immunity.

However, since the decisions of this court have steadfastly refused to so limit the doctrine, the prevailing rule must continue to be the law until the Legislature sees fit to change it.