### State v. First, Inc.
*[Cite as 2 AOA 90]*

*Case No. 11486*
*Montgomery County, (2nd)*
*Decided April 3, 1990*

*Anthony J. Celebrezze, Jr., Attorney General, By: Catherine M. Cola, Assistant Attorney General, Chief Counsel's Staff, 30 E. Broad Street, 15th Floor, Columbus, Ohio 43266-0410, Attorney for Appellant, State of Ohio.*

*Janet K. Cooper, 2700 Kettering Tower, Dayton, Ohio 45423, Attorney for Appellee, First, Inc.*

BROGAN, J.

The State of Ohio brought suit against First, Inc. to recover public funds in the amount of $38,144.50. Upon the referee's recommendations, the trial court found in favor of the state for $144.50, ruling that any claims to the other $38,000 were barred by waiver and promissory estoppel. This matter is now before the court on the State's timely notice of appeal from said judgment.

The State asserts two assignments of error, claiming that the doctrines of estoppel and waiver are not available against the government, and that even if they were available, it is against the manifest weight of the evidence to apply them to the instant case. For reasons stated more fully below, we will affirm the trial court's judgment.

This action revolves around the 1984 Governor's Minority Business Conference. The Conference is an annual event sponsored by the State through the auspices of its Department of Development ("DOD").

The purpose of the Conference is to provide education and support to minority entrepreneurs in establishing and expanding small businesses.

In April of 1984, less than two months before the Conference was to be held, the DOD discovered that it would need a co-sponsor for the event. Towards this end, the DOD contacted First, Inc., a non-profit corporation located in Dayton.

Negotiations began, with Taylor Jones representing First, Inc., and Carol May, Director of the Small and Developing Business Division, representing the DOD. The trial court found that during these negotiations Ms. May told Mr. Jones that it was standard practice for the State to pay an administrative fee and that it was unnecessary to provide for this fee in the written contract. There was testimony that First, Inc. would not have agreed to co-sponsor the Conference without the promise of an administrative fee.

A written contract was signed between the State and First, Inc. on May 17, 1984. First, Inc. was to coordinate and conduct the conference, while the DOD was to reimburse all expenditures. No mention was made of an administrative fee.

The Conference was held in Columbus on June 27, and 28, 1984. Both parties agree that it was an unprecedented success, with attendance at three times the amount anticipated by the State. After the Conference was over, First, Inc. submitted a bill to the DOD for expenses in excess of the money advanced to it. This included $28,000 clearly designated as administrative fees. On September 6, 1984, the State paid for all excess expenses, including the administrative fee.

At the same time, the DOD entered into a written agreement to pay First, Inc. an additional $10,000 to prepare a report on the 1984 Conference and begin preliminary planning for the 1985 Conference. The DOD acknowledges receiving this report, albeit four months late, but claims that First, Inc. improperly retained the fee for it. First, Inc. was contractually bound to turn over to the DOD all money that it charged for participants to enter the Conference. First, Inc. asked the DOD if it might retain $10,000 of the receipts in satisfaction of the amount due for the report. On April 16, 1985, Greg Kostelac, Chief of Legal Affairs for the DOD, wrote a letter to First, Inc., with copies sent to May and the Director of the DOD, stating that First, Inc. could retain $10,000 of the receipts if it would remit the remaining $11,284 to the DOD. First, Inc. did exactly that.

In late 1985 a routine audit of the 1984 Conference was conducted by the DOD. This audit found that $457.51 was unaccounted for by First, Inc. and should be remitted to the DOD. A second audit was then ordered by a new director of the DOD.

This report was issued on September 9, 1986 and found that First, Inc. should remit: 1) $28,000 administrative fee; 2) $10,000 retained receipts; and 3) $144.50 in disallowable entertainment expenses.

First, Inc. acknowledges that it owes $144.50 to the DOD. The trial court found that May's promise of an administrative fee reasonably induced First, Inc. to hold the Conference, and the State was therefore estopped from withholding the fee. The trial court also found Kostelac's letter to be a waiver of the requirement that First, Inc. remit all receipts.

As its first assignment of error, the State contends that:

"THE TRIAL COURT ERRER IN APPLYING PROMISSORY ESTOPPEL A-GAINST THE STATE OF OHIO WHEN SUCH APPLICATION IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

This assignment consists of two arguments. First, that promissory estoppel is not available against the State when it exercises a governmental function. Second, that it is against the manifest weight of the evidence to find that promissory estoppel or waiver occurred in the instant case. We disagree with both contentions.

There is little doubt that the State is correct in its assertion that conducting the Conference was a governmental function instead of a proprietary one. Governmental functions are obligations of sovereignty, imposed by statute or constitution, to foster the public health, safety, or welfare, while proprietary functions are non-obligatory acts done merely for the comfort or convenience of the citizenry. *City of Wooster* v. *Arbenz* (1927), 116 Ohio St. 281. It almost goes without saying that the State is mandated "[t]o create or preserve jobs and employment opportunities, [and] to improve the economic welfare of the people of the state...." Section 13, Article VIII, Ohio Constitution. The DOD was created in order to "develop and promote plans and programs designed to assure that state resources are efficiently used, [and] economic growth is properly balanced...." R.C. 122.01. Towards this end, the DOD is directed to "[a]ssemble, analyze, and make available to governmental agencies and the public, information relative to the human, natural, and economic resources and economic needs of the state." R.C. 122.06(A). Moreover, the Minority Business Development Division was created within the DOD in order to "[p]rovide technical, managerial, and counseling services and assistance to minority business enterprises." R.C. 122.92(A). While a Minority Business Conference is not explicitly mentioned in these excerpts, such a thing is reasonably related to the duties of the DOD and its Minority Business Development Division. Therefore, the authority to conduct the Conference may be fairly implied from the express powers enumerated above. *Waliga* v. *Kent State University* (1986), 22 Ohio St. 3d 55. Fostering minority businesses improves the entire economy of the State, and therefore benefits the economic welfare of *all* of the people, not just the particular disadvantaged groups that directly participate in the event. Since the Conference is an incident of sovereignty imposed by both statute and constitution to promote the economic welfare of the State, it is a governmental function.

The State argues that the fact that the Conference was a governmental function necessarily precludes the use of promissory estoppel. We do not agree. In its most recent case on point, the Supreme Court has once again stated that "[p]rinciples of equitable estoppel *generally* may not be applied against the State or its agencies when the act or omission relied on involves the exercise of a governmental function." *Sun Refining & Marketing Co.* v. *Brennan* (1987), 31 Ohio St. 3d 306, 307 (emphasis added). If the prohibition against using estoppel is only a *general* rule, then by necessary implication there must be exceptions where the doctrine *is* applicable. Throughout at least eighty years of jurisprudence this rule has been accompanied by the qualification that it is only "general" in nature. See, e.g., *Sekerak* v. *Fairhill Mental Health Center* (1986), 25 Ohio St. 3d 38; *Chevalier* v. *Brown* (1985), 17 Ohio St. 3d 61; *BESL Corporation* v. *Public Utilities Commission of Ohio (1976), 45 Ohio St. 2d 146;* 174 Ohio St. 518; *Kildow* v. *Industrial Commission of Ohio* (1934), 128 Ohio St. 573; *City of Columbus* v. *Public Utilities Commission of Ohio* (1921), 103 Ohio St. 79; *State* v. *Fenn* (1910), 10 Ohio N.P.N.S. 325. Unfortunately, very little has been said as to what constitutes an exception to this "general" rule.

If one examines the cases cited by the State, a pattern begins to emerge as to when estoppel is not available. In *Brennan, supra,* the plaintiff relied on the erroneous advice of an assistant attorney general that service by mail of a notice of appeal from an administrative decision on the last day to appeal would perfect service. This advice was contrary to R.C. 119.09. In *Sekerak, supra* the plaintiff was erroneously told that she had ten working days to appeal her termination from a state hospital instead of the ten actual days provided for in R.C. 1.14 and 124.328. In *Chevalier, supra* a candidate was told by a state employee the wrong date to file for the mayoral election in contravention of R.C. 733.08. In

*Griffith* v. *J.C. Penny Co.* (1986), 24 Ohio St. 3d 112, a state employee told plaintiff an incorrect amount of time to file for reconsideration of denial of unemployment benefits under R.C. 4141.28(G)(1). In each of these cases, the Supreme Court held that estoppel was not available. In none of the cases where estoppel was denied, unlike the case at bar, was the plaintiff in a business or contractual relationship with the State's agent who induced their reliance. Also, in each of these cases, if effect had been given to the promisors' representations, statutory law would have been superseded. It is obvious that estoppel should not be applied if it would in effect allow the State's agents to unilaterally amend the acts of the legislature. This would not only be unconstitutional, but also antahema to any rational concept of democratic government. However, this problem does not present itself in the case at bar. Estopping the DOD from denying its promise to pay an administrative fee to First, Inc. does not in any way preempt the General Assembly's authority to make law. There is no question that the DOD has the authority to pay administrative fees, the only question is whether in this instance it actually promised these fees to First, Inc. This fact is sufficient to distinguish it from the cases where promissory estoppel is unavailable.

First, Inc. directs our attention to several cases where estoppel was applied against the government. The State argues that we should disregard these cases because they involve municipal corporations instead of the State. We need not rule upon this contention, however, since we find these cases to be persuasive if not authoritative.

It has been held that estoppel is applicable to municipalities in contract situations so long as the subject matter of the contract is not illegal or ultra vires. *Baxter* v. *Village of Manchester* (1940), 64 Ohio App. 220. While estoppel is to be sparingly invoked, it is applicable if the municipality made a representation which was within its power to make, and this action induced the plaintiff's reliance. *City of Cleveland* v. *Cleveland Electric Illuminating Co.* (N.D. Ohio, 1976), 440 F. Supp. 193. A new city tax commissioner can be estoppel from denying the validity of his predecessor's interpretation of a municipal tax ordinance where his predecessor made verbal and written assurances to company which induced that company to move its factory to their city. *Shapely, Inc.* v. *City of Norwood Tax Board of Appeals* (1984), 20 Ohio App. 3d 164.

Federal courts have long recognized that if estoppel were not available against the United States in contract disputes, it would give government negotiators an unfair advantage to lay traps for unsuspecting business people. *Whike Construction Co.* v. *U.S.* (1956), 140 F. Supp. 560.

The realities of modern society require that governments enter into contracts with private individuals. In order for this relationship to operate efficiently, it is necessary that the business community know that government "plays by the same rules" of contract law as does everyone else. So long as the subject matter of the contract is within the scope of the agency's authority, the application of traditional contract law does not impinge upon the government's sovereignty. It is this rationale that has traditionally allowed the application of estoppel to the state when performing a proprietary function. Unlike in the past, however, modern states must sometimes contract with private entities to carry out even governmental functions.

The Supreme Court has left open the question of whether estoppel is available against the State in contract situations.

"The issue presented by this case is whether the state of Ohio is obliged under the doctrine of promissory estoppel to compensate Dewey A. McCroskey for his efforts in attempting to arrange the construction and lease of office space to the state.

"This court concludes that the elements of promissory estoppel have not been satisfied in the instant case. Because of that conclusion, it is unnecessary to consider the state's contention that the doctrine cannot apply against the state." *McCroskey* v. *State* (1983), 8 Ohio St. 3d 29,30. It is unlikely that this issue was considered resolved by later estoppel cases where contractual relationships were not involved, since as was seen *supra,* they did no more than to reiterate the case law that existed long before McCroskey was heard. It is equally unlikely that the Supreme Court would have granted certiorari in *McCroskey* unless it felt that the contractual relationship somehow distinguished it from preceding cases. The Supreme court exists to resolve questions of constitutional significance and great general interest, not to decide if under a given factual situation the elements of promissory estoppel are met. We hold that while promissory estoppel is generally not available against the State in the performance of a governmental function, it is available in a contractual context where the subject matter of the contract is within the authority of the person acting on behalf of the State.

The State also argues that any oral representation made by May during negotiations were merged with any superseded by the written agreement. While the argument might have merit if First, Inc. were asserting an oral contract, it is irrelevant to a promissory estoppel claim.

The State's next argument under this assignment of error is that it was against the manifest weight of the evidence for the trial court to have found that the elements of estoppel and waiver were met in the instant case. We are not in accord.

The Supreme Court has held that the doctrine of promissory estoppel means that:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Talley* v. *Teamsters Local No. 377* (1976), 48 Ohio St. 2d 142, 146.

Judgments supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279. The trial court heard testimony that May, the person in charge of the Conference from the DOD perspective, promised First, Inc. an administrative fee, that this was standard procedure when the State co-sponsored events such as this one, and that as such it was unnecessary to provide for the fee in the grant agreement. The trial court was in the best position to judge the credibility of this testimony. Officers of First, Inc. testified that they relied upon this promise and would not have conducted the Conference without the expectation of receiving an administrative fee. The State argues that First, Inc. could not have reasonably relied upon this promise since it should have checked to see if it really was the State's common practice to pay administrative fees without providing for them in the contract. We cannot find that this proposition is true as a matter of law. The State forgets that it was the DOD that approached First, Inc. one month before the Conference was to be held and asked to initiate this transaction. Double and triple checking that might have been reasonable for First, Inc. to perform if it had a year or even several months to plan and execute a major event like the Conference, are not necessarily reasonable when an immovable deadline looms mere weeks away. It was also well within the trial court's prerogative to have found that injustice could only be avoided by enforcing the DOD's promise. Thus, the trial court could reasonably have found that the elements of promissory estoppel were met.

This court has held that:

"A "waiver" is the voluntary surrender or relinquishment of a known legal right or intentionally doing an act inconsistent with claiming it. In the former case it amounts to an agreement and must be supported by a consideration which may be either a benefit to the promisor or a disadvantage to the promisee. In the latter case, it may be accomplished by acts or conduct and there may be an estoppel from insisting upon the right claimed to have been relinquished, in which event no consideration is necessary." *Seege* v. *Seege* (Sept. 22, 1988), Montgomery App. No. 10908, unreported, citing *Marfield* v. *Cincinnati, D&T Traction Co.* (1924), 111 Ohio St. 139, 145.

The trial court had before it the letter of April 16, 1985 written by the DOD's chief of legal affairs to First, Inc.'s general counsel, which reads in pertinent part:

"The issue of paying over and accounting for the 1984 conference receipts can also be quickly resolved. You indicated to me that $21,284.00 was deposited and still held at Society Bank here in Columbus in an escrow account ("First, Inc. Governor's Minority Business Conference Escrow Account"). The problem arose over this apparently because we were waiting for First, Inc. to send the money in along with the final accounting while First, Inc. was waiting for detailed instructions from us on how to do it. Since no instructions or requests were made, nothing was sent in. In any event the Department owes First, Inc. $10,000 while First, Inc. is holding $21,284 plus interest of the Department's in an escrow account.

Even though as I indicated to you this morning our financial people suggest these reciprocal payments be made as Mr. J. Steven Martin outlined in his letter to you yesterday, *we are willing to accommodate First, Inc. by allowing it to pay over to itself, herewith, from the above-mentioned escrow account, the $10,000 due and owing it per its March 11, 1985 invoice*. In return, First, Inc. will immediately forward to the Department per the second paragraph of Mr. Martin's April 15, 1985 letter, the $11,284 principal balance and all accrued interest now held in the escrow account. Along with these monies, First, Inc. will supply a breakdown of 1984 conference receipts indicating the amounts received and number of full or partial registration

fees, exhibitor's fees or other receipts."(Emphasis added).

This is competent and credible evidence from which the trial court could have found that DOD acted in a manner inconsistent with enforcing the receipt remittance clause of the contract. As such, even without consideration the State can be estopped from reasserting contractual rights that it has waived.

The State's first assignment of error is found to be not well taken.

For its second assignment of error, the State asserts that:

"THE TRIAL COURT ERRED IN ESTOPPING THE STATE FROM COLLECTING A FINDING FOR RECOVERY OF PUBLIC FUNDS ISSUED BY THE AUDITOR OF STATE BASED ON THE UNAUTHORIZED ACTS, ADMISSIONS OR CONDUCT OF ITS EMPLOYEES."

The crux of the State's position is that none of the people with whom First, Inc. dealt had the authority to bind the DOD. We do not agree.

It is uncontested that the DOD had the authority to pay an administrative fee to First, Inc. The State, however, argues that *only* the Director of the DOD could bind the State in this matter, citing OAG 83-034. We do not read the attorney general's opinion in the same way as does the State. OAG-83-034 stands for the proposition that it is the Director who has "ultimate authority" for DOD contracts rather than the Governor. If the Director has "ultimate" authority, then some authority must also rest in the hands of certain of his subordinates. No statute or case law has been cited indicating that only the Director can act for the DOD. The representations that are at issue were made by the Director of the Small and Developing Business Division, the Director of the Minority Business Development Division, and the Chief of Legal Affairs for the DOD. Surely such high ranking officials of the DOD, assigned by the Director to coordinate the Conference, had authority to bind the State in regard to the Conference. Conducting business would become impossible for the DOD if the Director were required to be personally involved in each and every negotiation. Moreover, the Director was sent a copy of the letter which waived the State's right to receive $10,000 of receipts. Such knowledge without comment for two years implies the Director's approval.

Both assignments of error having been found to be not well taken, the judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON, J., and GRADY, J., concur.