DORROW ET AL. *v.* KENDRICK ET AL., THIRD-PARTY PLAINTIFFS; OHIO DEPARTMENT OF TRANSPORTATION, THIRD-PARTY DEFENDANT.

(No. 84-06293-PR — Decided February 17, 1987.)

Court of Claims of Ohio.

*Charles H. Myers, Jr.,* and *James F. Gallagher,* for third-party plaintiffs.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Donald J. Guittar,* for third-party defendant.

STERN, J. This is an action arising out of an automobile accident which occurred on December 18, 1980, at the intersection of S.R. 161 and S.R. 315. The sole issue before the court at this time is the bifurcated issue of liability of third-party defendant, Ohio Department of Transportation.

Plaintiff was a passenger in an automobile operated by defendant, Elizabeth A. Kendrick. The automobile was traveling in a westbound direction on S.R. 161. At the same time and place, Ronald E. Wise was operating his motor vehicle in an eastbound direction on S.R. 161. Defendant Kendrick (Dorrow's driver) prior to the time of the accident stopped at a red light traffic signal regulating westbound traffic. The traffic signal had been installed two days prior to the accident. Prior to two days before the accident occurred there was a protected left-hand turn when the signal first turned green at the intersection for westbound traffic on S.R. 161. The change in the traffic signal on the day of the accident was one of the many changes made in that general area of a large-scale construction project. The old traffic signals were covered with bags after the new traffic signal was installed for a period of days to determine whether the newer traffic signal was functioning properly.

Kendrick and her mother testified that they relied on their past experience with the traffic control sequence when making a left-hand turn while faced with only a green light.

The issue before the court is whether the Department of Transportation created a nuisance in making the traffic signal sequence change by replacing the old traffic light with the new one. In doing so, it changed the sequence upon which Kendrick claims to have relied. Plaintiff claims that the manner in which the traffic signals were changed created a nuisance.

To constitute a nuisance, the thing or act complained of as constituting such nuisance must either cause injury to the property of another, obstruct the reasonable use or enjoyment of such property or cause physical discomfort to such other person. 41 Ohio Jurisprudence 2d (1960, Supp. 1986) 9, citing *State, ex rel. Chalfin,* v. *Glick* (1960), 113 Ohio App. 23, 17 O.O. 2d 33, 177 N.E. 2d 293, affirmed (1961), 172 Ohio St. 249, 15 O.O. 2d 410, 175 N.E. 2d 68.

The use, installation and maintenance of traffic signals is authorized by R.C. 4511.10 which states:

"The department of transportation may place and maintain traffic signal devices, conforming to its manual and specifications, upon all state highways

as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn or guide traffic."

The Department of Transportation has sole authority over the installation and maintenance of traffic control signals on state highways outside the limits of municipal corporations. Ohio Manual of Uniform Traffic Control Devices for Streets and Highways, Section 6 A-4(1987 Rev.).

Once the decision has been made to control the traffic at an intersection with signals, and a traffic control system has been designed and installed, the question of liability for failure to maintain the traffic control devices arises. A state can be held liable for accidents caused by improperly maintained traffic control devices at intersections only if the other elements of actual negligence are proved. Annotation (1970), 34 A.L.R. 3d 1008, 1015-1016.

In *Fankhauser* v. *Mansfield* (1969), 19 Ohio St. 2d 102, at 109, 48 O.O. 2d 103, at 107, 249 N.E. 2d 789, at 793, the court stated:

"Traffic control signals, in this day of swift travel by high powered vehicles, are as necessary to orderly travel in urban areas as the surface of the road itself. Perhaps, in the past, traffic signals were of less importance than now, but they are now as much a part of our streets and highways as median strips, safety islands, or guard rails. In view of the obvious degree of reliance now placed in traffic control devices by users of the streets, it is difficult to perceive a greater nuisance to orderly urban street travel than a nonfunctioning or malfunctioning traffic control device. To hold otherwise, on the basis that the device is physically not a part of the roadway, would defy logic and frustrate the manifest legislative intent to keep streets and highways free from nuisance. To say that a nonoperative traffic signal at an intersection of the city streets is not a nuisance, but that a chuck hole at the same intersection is a nuisance, would be an over-technical distinction."

The state of Ohio has always recognized its obligation to keep the public ways open. *Wooster* v. *Arbenz* (1927), 116 Ohio St. 281, 156 N.E. 210. The court stated that a plaintiff must prove he sustained injury by a defective condition of the street. *Id.* at paragraph three of the syllabus.

The determination of the timing sequence of a traffic signal is a determination of the installer of such a device. Annotation, *supra,* at 1096, citing *Pritchard* v. *Sully-Miller Contracting Co.* (1960), 178 Cal. App. 2d 246, 2 Cal. Rptr. 830. That case also holds that if the timing sequence creates a dangerous condition in the public property a state may be held liable for injuries. There was no credible proof in the case at bar offered by plaintiff that the change in traffic sequence through a new signal device created a dangerous or hazardous condition.

Whenever traffic is controlled by traffic control signals exhibiting different colored lights, said lights shall indicate and apply to drivers of vehicles. R.C. 4511.13.

The sole and proximate cause of the injury sustained by plaintiff was the negligence of the driver of the vehicle in which plaintiff was a passenger. There was nothing shown that would indicate that the changed traffic control device in any way caused the accident. Under the operation of motor vehicles statutes (R.C. Chapter 4511), a driver of an automobile is legally bound to follow the directions made by a traffic signal device as to stopping, going, etc. There are no exceptions to this rule. Each time a motorist enters an intersection where there are traffic control devices, the status of the traffic light must be adhered to. There are no exceptions, nor can there be any, to this general rule. A

reliance cannot be contended where there has been a change in a traffic light sequence, as the claim at bar indicates.

The Department of Transportation is required by law to construct, maintain, etc. state highways that are reasonably safe for automobile passengers. The defendant's own manual of traffic control devices indicates that the department is constantly endeavoring to make the highways safer for motorist traffic. Signs, center guardrails made of concrete, traffic signal devices, travel lanes, and requiring any change where traffic conditions warrant are examples of this purpose.

Plaintiff has failed to establish by a preponderance of the evidence that the defendant was in any manner negligent in causing injury to Dawn Dorrow. Plaintiff's complaint is dismissed. Judgment is entered for defendant.

*Complaint dismissed.*

STERN, J., retired, of the Supreme Court of Ohio, sitting by assignment in the Court of Claims.