MALUKE, Admr.,

v.

OHIO DEPARTMENT OF TRANSPORTATION.

Court of Claims of Ohio.

No. 2000–01023.

Decided Jan. 11, 2001.

*John D. Smith* and *James D. Ruppert;*  *Michael A. Malyuk,* for plaintiff.

*Betty D. Montgomery,* Attorney General, *Michael J. Valentine* and *James P. Dinsmore,* Assistant Attorneys General, for the state.

FRED J. SHOEMAKER, Judge.

This case was tried to the court from November 27 to December 1, 2000, and judgment was rendered from the bench in favor of plaintiff.   In accordance with that declaration, the court makes the following findings of fact and conclusions of law:

## Facts

(1) On January 7, 1998, four students from the Warren County Career Center ("WCCC"), Christopher Heitfield, Lindsay Pennington, Victoria McCoy, and Jennifer Zimmer met at the school parking lot and got into Heitfield's Chevrolet S–10 truck.[1] Heitfield exited the lot and drove northbound on S.R. 48.

(2) It had been raining throughout the day in the vicinity of the school with occasionally heavy downpours. Heitfield proceeded northbound for a short distance before turning around on a side street in order to travel southbound on S.R. 48.

(3) While proceeding southbound, Heitfield saw standing water in the traveling lane. He attempted to slow his vehicle by downshifting and applying his brakes. As the vehicle began to slow, it traveled over the standing water, which caused the tires to hydroplane and lose traction.

(4) Heitfield lost control of the truck as it drifted left of the centerline and into the path of a northbound vehicle. The resulting collision caused Heitfield and his passengers to be ejected from the truck. Plaintiff's decedent, Jennifer Zimmer, and Victoria McCoy sustained fatal injuries.

(5) Defendant's employees were aware that standing water accumulated on S.R. 48 in the vicinity of WCCC following periods of heavy rain. The accumulation of water on the roadway was due in part to drainage from both an adjacent field and the career center school's service driveway. The water drainage settled in low points of S.R. 48 due to an inadequate cross-slope that predominantly affected the southbound traveling lane.

(6) The cross-slope of the southbound lane of S.R. 48 in the area where the standing water existed was significantly less than the 1.56 percent grade that was required by defendant's design manual and the roadway plans. The slope of the approach end of the school's service driveway and the adjoining paved roadway shoulder was also deficient and less than that required by defendant's construction standards and the construction permit issued by defendant.

(7) The court finds that the culvert pipe underneath the service drive was of insufficient capacity to handle the volume of water that existed during periods of heavy rain.

(8) Defendant did not adequately maintain the turf shoulder that was adjacent to the roadway. The high turf shoulder acted as a dam that prevented water from draining into the culvert.

---

1. Christopher Heitfield is not a party to this action. Jennifer Zimmer is plaintiff's decedent in the companion case, No. 99–04011.

(9) It was defendant's practice to place high water signs on either side of the standing water to warn both northbound and southbound motorists of the hazardous condition. Defendant's employees would set up the signs when local law enforcement officers or residents of the area notified defendant that a water hazard existed. It is probable that water accumulated at this site on many occasions that were not reported. On average, defendant had placed high water signs in front of WCCC two to three times a year since the early 1990s. Defendant did not place high water signs at the scene on the day of the incident.

(10) Although there was conflicting testimony regarding the surface area and depth of the standing water, the court finds the testimony of Lieutenant Boster and Officer Pemberton of the Clear Creek Township Police Department to be credible. Lieutenant Boster was the first law enforcement officer to arrive at the scene of the accident; he found water running across S.R. 48 at a depth of at least one to two inches. Officer Pemberton arrived approximately ten minutes after Boster and estimated that the accumulated water was three to four inches deep near the centerline of the roadway.

(11) Heitfield's truck was equipped with tires that were mismatched in size, had uneven tread, and were in generally poor condition. Three of the four tires had tread depth that was at or below the legal minimum. The condition of the tires on Heitfield's vehicle made the truck more susceptible to hydroplaning. However, on prior occasions, Sergeant Fritz of the Clear Creek Township Police Department had experienced hydroplaning in the area where the accident occurred while driving both his police cruiser and his personal vehicle, each of which had well-maintained tires.

## Conclusions of Law

(1) In order for plaintiff to prevail upon her claims of negligence, she must prove by a preponderance of the evidence that defendant owed her a duty, that it breached that duty, and that the breach proximately caused the death of plaintiff's decedent. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469.

(2) Defendant has a duty to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Ohio Dept. of Transp.* (1976), 49 Ohio App.2d 335, 3 O.O.3d 413, 361 N.E.2d 486; *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 42, 564 N.E.2d 462, 465.

(3) To constitute a nuisance, the thing or act complained of must either cause injury to the property of another, obstruct the reasonable use or enjoyment of such property, or cause physical discomfort to such person. *Dorrow v. Kendrick* (1987), 30 Ohio Misc.2d 40, 40, 30 OBR 481, 482, 508 N.E.2d 684, 685.

28

■ (4) "[A] civil action based upon the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself, creates an unreasonable risk of harm, ultimately resulting in injury. The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist." *Rothfuss v. Hamilton Masonic Temple Co.* (1973), 34 Ohio St.2d 176, 180, 63 O.O.2d 270, 272, 297 N.E.2d 105, 109.

■ (5) Under a claim of qualified nuisance, the allegations of nuisance merge to become a negligence action. *Allen Freight Lines, Inc. v. Consol. Rail Corp.* (1992), 64 Ohio St.3d 274, 275–276, 595 N.E.2d 855, 856.

■ (6) Defendant had notice of the recurring water problem that constituted a nuisance for at least seven years prior to the incident. Defendant's roadway inspection records show that during the months of May, June, and July 1997, defendant designated the maintenance priority code for drainage repair on S.R. 48 near the WCCC service driveway as a "priority." On December 10, 1997, a month before the accident, defendant changed the drainage repair priority code to "immediate."

■ (7) Defendant was negligent for failing to correct the roadway and drainage conditions that caused water to accumulate in the vicinity of WCCC on S.R. 48 during periods of heavy rain.

■ (8) Although Heitfield failed to use sufficient caution, given the weather and road conditions, the court finds that defendant's failure to properly maintain its roadway drainage system and the nuisance created by the failure was a proximate cause of the accident.

## Judgment Entry

This action was tried before the court on the sole issue of liability. Upon hearing all the evidence and for the reasons set forth in the decision filed concurrently herewith, the court renders judgment for plaintiff. A trial on the issue of damages will be scheduled in the near future.

*Judgment accordingly.*

FRED J. SHOEMAKER, J., retired, of the Franklin County Court of Common Pleas, sitting by assignment.

## SETTLEMENT AGREEMENT

Filed—June 11, 2001

1. This Agreement is made between plaintiff, Bernice L. Maluke, as personal representative and administrator of the of Estate of Jennifer Zimmer, Bernice L. Maluke, individually, Donald R. Zimmer, II, individually, and Donald F. Zimmer, individually (hereinafter referred to individually and collectively as "plaintiff"), and the Ohio Department of Transportation, and their employees, contractors, servants, agents, staff, predecessors and successors and assigns in interest (hereinafter referred to individually and collectively as "defendant").

2. The plaintiff has asserted a claim against the defendant in an action now pending in the Court of Claims, entitled *Bernice L. Maluke, Admr., v. Department of Transportation,* identified as Ohio Court of Claims case No. 2000–01023.

3. This Agreement is made as a compromise between the parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described above.

4. It is understood by the plaintiff and the defendant that the facts upon which this Agreement is made may hereafter prove to be other than or different from the facts now known by any of them or believed by any of them to be true. Each of the parties hereto expressly accepts and assumes the risk of the facts proving to be so different, and each of the parties hereto agree that all the terms of this Agreement shall be in all respects effective and not subject to termination or rescission by reason of any such difference in facts.

5. The parties agree that the terms of this compromise and Settlement Agreement bind the parties hereto, and their assigns and successors in interest.

6. The plaintiff understands that this settlement is a compromise of disputed claims and payment thereof is not to be construed as an admission of liability on the part of the defendant.

7. This Settlement Agreement contains the entire Agreement between the parties with regard to the matters set forth herein. There are no other understandings or agreements, verbal or otherwise, in relation thereto, between the parties except as expressly set forth herein.

8. In consideration of the mutual covenants set forth herein, the parties agree as follows:

A. The defendant agrees to pay the plaintiff, Bernice L. Maluke, Admr., the lump sum of three hundred twelve thousand dollars ($312,000.00) pursuant to Section 2743.19, Revised Code. In addition, defendant agrees to purchase an annuity in the amount of two hundred thirty-eight thousand dollars ($238,000.00) to provide periodic payments as set forth below. No representation is made by

the defendant as to the tax consequences of payment of the amounts specified in this paragraph.

B. The plaintiff agrees that all claims, demands, rights, causes of action, costs, loss of services, expenses, and any and all other damages on account of, or in any way arising out of the actions or inactions of defendant, state of Ohio, Ohio Department of Transportation, its officers, employees, servants, or agents, during or arising out of the incident described in the complaint in Court of Claims Case No. 2000–01023 be released, settled, satisfied, discharged and compensated.

C. Periodic Payment(s). Defendant hereby agrees to make the following payments:

1. Periodic Payments for the Benefit of Bernice L. Maluke

$1,202.77 per month for life with twenty years certain starting on 11/12/2006 and $10,000 payable on 8–31–2006.

2. Periodic Payments for the Benefit of Donald R. Zimmer, II

$417.65 per month for life starting on 5–19–2009 with 20 years certain.

3. Periodic Payments for the Benefit of Donald F. Zimmer

$22,382.38 every 6 years for life with 5 payments certain starting on 7/10/2006.

D. Nature of Payments. All sums paid to plaintiff pursuant to this Agreement constitute damages on account of personal injuries or sickness, in the case involving physical injury or physical sickness arising from the occurrence and are intended to fall within the meaning and scope of Section 104(a)(2) [Title 26] of the Internal Revenue Code of 1986 as amended. No part of the sum paid provides compensation for past or future loss of earnings or for medical expenses related to plaintiff's injuries.

9. Financing of Periodic Payment Obligation Assigned to MassMutual Assignment Company

A. Assignment of Obligation. It is understood and agreed by and among the parties that defendant will assign its obligation to make such future payment(s) as set forth in Paragraphs 8C–1, 2, and 3 to MassMutual Assignment Company (hereinafter. called "MMAC") pursuant to "Qualified Assignments" within the meaning of the Internal Revenue Code Section 130(c) [Title 26]. A specimen of such Qualified Assignment is attached hereto as "Exhibit A." Massachusetts Mutual Life Insurance Company will guarantee the performance of MMAC, a copy of which is attached as "Exhibit B".

B. Payees of Periodic Payments. All payments for the benefit of Bernice L. Maluke shall be made to Bernice L. Maluke as Payee. Should said Bernice L. Maluke die before all said payments are made, any remaining certain payments

shall be made to John Maluke, as long as he is alive. Should said John Maluke die before all said payments are made, any remaining payments shall be made to Donald F. Zimmer. Payee retains the right to request a change in the beneficiaries of such payments in a manner acceptable to MMAC and Massachusetts Mutual Life Insurance Company. Such change will not be unreasonably withheld by MMAC.

All payments for the benefit of Donald R. Zimmer II shall be made to Donald R. Zimmer II as Payee. Should said Donald R. Zimmer II die before all said payments are made, any remaining certain payments shall be made to Donald F. Zimmer, as long as he is alive. Payee retains the right to request a change in the beneficiaries of such payments in a manner acceptable to MMAC and Massachusetts Mutual Life Insurance Company. Such change will not be unreasonably withheld by MMAC.

All payments for the benefit of Donald F. Zimmer shall be made to Donald F. Zimmer as Payee. Should said Donald F. Zimmer die before all said payments are made, any remaining certain payments shall be made to Bernice Maluke and Donald R. Zimmer II in equal payments or to the survivor of them. Payee retains the right to request a change in the beneficiaries of such payments in a manner acceptable to MMAC and Massachusetts Mutual Life Insurance Company. Such change will not be unreasonably withheld by MMAC.

C. Third Party Payment. It is further understood by plaintiff that all Periodic Payments as set forth in this Agreement will be financed by the purchase of an Annuity Contract from Massachusetts Mutual Life Insurance Company. Defendant or its assignee shall retain ownership of the Annuity Contract, except as set forth in the qualified assignment. For its own convenience, defendant or its assignee, MMAC, may make payments directly to the payees described in the Payee of Periodic Payments paragraph of this Agreement. Such payments will be applied against the obligation of defendant or its assignee to such payees as set forth in this Agreement.

10. Status of Plaintiff

Plaintiff acknowledges that he/she has no right to receive the present value of the Periodic Payments due to him/her, or to control the investment thereof, or accelerate, defer, increase or decrease the amount of any such payments. Plaintiff shall only be entitled to receive said payments as they are due. Plaintiff and defendant acknowledge that payments made under this Agreement are for alleged personal and physical injuries under Section 104(a)(2) of the Internal Reserve Code.

11. Assignee as Sole Obligor

Plaintiff hereto also expressly agrees that once an assignment is made of the duties and obligations to make any aforementioned Periodic Payments by defendant to MMAC pursuant to this Agreement, all the duties and responsibilities otherwise imposed on defendant by this Agreement shall instead be binding solely upon MMAC. It is further understood that upon said assignment defendant shall be released from any and all obligations to make such Period Payments and MMAC shall at all times remain directly and solely responsible for and shall receive credit for the future payments.

12. Nonassignment by Plaintiff

The Periodic Payments to be received by Bernice L. Maluke, Donald R. Zimmer II, and Donald F. Zimmer pursuant to this Agreement are not subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance by Plaintiff.

13. Reliance by Plaintiff

This Agreement has been negotiated by the plaintiff. Plaintiff warrants, represents, and agrees that he/she is not relying n the advice of defendant, its counsel, or anyone associated with defendant as to the legal and income tax consequences of any kind arising out of this Agreement.

Accordingly plaintiff hereby releases and forever holds harmless defendant, any and all counsel or consultants for either of them, for any claim, cause of action, or other rights of any kind which plaintiff may assert because legal, income tax, or other consequences of this Agreement are other than those anticipated by plaintiff.

14. The plaintiff agrees to be bound by a Journal Entry dismissing with prejudice the above described claim known as Ohio Court of Claims Case No. 2000–01023 and the attached Release of All Claims.

15. The parties hereto acknowledge and agree that this Agreement shall not be binding on any of the parties until it has been duly presented to the Ohio Attorney General, as required by Section 2743.15(A), Ohio Revised Code, and Rule 7(A) of the Rules of the Court of Claims, for the Attorney General's approval, and the Ohio Attorney General has approved the Agreement. The parties further acknowledge that the signature of the Assistant Attorney General on this Settlement is on behalf of defendant and is not to be construed as the approval of the Attorney General. If the Attorney General shall fail or refuse to approve the settlement, this Agreement shall be null and void and without any force or effect, and none of the parties shall be bound thereby.

16. The parties hereto acknowledge and agree that this Agreement shall not be binding on any of the parties until it has been duly presented to the Ohio Court of Claims as required by Section 2743.15(A), Ohio Revised Code, and Rules

7(A) and (B) of the Rules of the Court of Claims, for the court's approval, and the court has approved the Agreement. If the court shall fail or refuse to approve the Agreement, this Agreement shall be null and void and without any force or effect, and none of the parties shall be bound thereby.

17. It is understood that this Agreement shall not be binding on any of the parties until it has been duly approved by the appropriate Probate Court and a certified copy of said Journal Entry is attached hereto. If said Probate Court shall fail or refuse to approve the Agreement, it shall become null and void without any force or effect, and none of its parties shall be bound by it.

18. The undersigned have read this Settlement Agreement, understand all its terms, if signing on behalf of a principal, have authority to sign settlement documents on its behalf, and have executed this Settlement Agreement voluntarily. The undersigned agree that this document may be signed in different locations and agree that any such signing shall be fully binding on all parties.

[Signatures of parties and counsel and signing dates omitted.]

## RELEASE OF ALL CLAIMS

The undersigned, Bernice L. Maluke, As Personal Representative and Administrator of the Estate of Jennifer Zimmer, Bernice L. Maluke, individually, Donald R. Zimmer II, individually, and Donald F. Zimmer, individually, in consideration of the sum of three hundred twelve thousand dollars ($312,000.00), to be paid pursuant to Section 2743.19(C), Revised Code, and the periodic payments set forth in the Settlement Agreement, Paragraph 8(C), together with the other consideration set forth in the Settlement Agreement, and in settlement of Ohio Court of Claims Case No. 2000–01023, entitled *Bernice L. Maluke, Admr., Ohio v. Ohio Department of Transportation,* voluntarily and knowingly execute this Release with the express intention of effecting the extinguishment of obligations herein designated.

The plaintiff, Bernice L. Maluke, as Personal Representative and Administrator of the Estate of Jennifer Zimmer, Bernice L. Maluke, individually, Donald R. Zimmer II, individually, and Donald F. Zimmer, individually, do hereby release, hold harmless from any liability, and forever discharge the state of Ohio, Ohio Department of Transportation, its agents, servants, employees and officers, personally and in any other capacity, from any and all claims, actions, causes of action, demands, costs, loss of services, expenses, and any and all other damages which the undersigned ever had, now have, or may have, or claim to have, against the state of Ohio, Ohio Department of Transportation, or its agents, servants, employees or officers, on account of or in any way arising out of the incident stated in the complaint filed in Ohio Court of Claims Case No. 2000–01023.

This Release and the Settlement Agreement constitute the entire agreement between the parties hereto, and the terms of this Release are contractual and not a mere recital.

IN WITNESS WHEREOF, I have hereunto set my hand this [15th] day of [May], 2001.

[Signatures of parties and notaries and signing dates omitted.]

Exhibit A (3 Pages)

**MASSMUTUAL ASSIGNMENT**        **Qualified Assignme**
**COMPANY**        **Release and Pledge Agreeme**

Claimant-Secured Party:      Bernice Maluke, Donald F. Zimmer, and Donald R. Zimmer, II

Assignor:      Ohio Department of Transportation

Assignee-Debtor:      MassMutual Assignment Company

Annuity Issuer:      Massachusetts Mutual Life Insurance Company

Annuity Contract No.:

Agreement Effective Date:

This agreement is made and entered into by and among the parties hereto as of the Agreement Effective Date with reference to the following facts:

A. Claimant-Secured Party has executed a settlement agreement or release dated (the "Settlement Agreement"), which provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant-Secured Party as stated in Addendum No. 1 (the "Periodic Payments");

B. The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130( c ) of the Internal Revenue Code of 1986, as amended (the "Code"); and

C. The Assignee-Debtor desires to make the Claimant-Secured Party a secured creditor with respect to the Assignee-Debtor's obligation to make the Periodic Payments.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1. The Assignor hereby assigns and the Assignee-Debtor hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee-Debtor assumes no liability to make any payments not specified in Addendum No. 1. The Claimant-Secured Party hereby accepts the Assignee-Debtor's assumption of the Assignor's liability to make the Periodic Payments and therefore releases the Assignor from all such liability.

2. The Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(1), 104(a)(2) and 130(c) of the Code.

3. The Assignee-Debtor's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Thus, none of the Periodic Payments may be accelerated, deferred, increased or decreased, nor may any of them be anticipated, sold, assigned or encumbered, and any attempt to accelerate, defer, increase or decrease the periodic payments, or to anticipate, sell, assign or encumber these payments shall be void.

4. The obligation assumed by Assignee-Debtor with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5. This Agreement shall be governed by and interpreted in accordance with the laws of the State of Ohio.

6. The Assignee-Debtor may fund the Periodic Payments by purchasing an Annuity from the Annuity Issuer to serve as a "qualified funding asset" within the meaning of Section 130(d) of the Code. All rights of ownership and control of the Annuity shall be and remain vested in the Assignee-Debtor except as provided in paragraphs 11 and 12 of this Agreement.

7. The Assignee-Debtor may have the Annuity Issuer send payments from the Annuity directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee-Debtor's convenience and shall not provide the Claimant-Secured Party or any payee with any rights of ownership or control over the Annuity or against the Annuity Issuer.

8. Assignee-Debtor's liability to make Periodic Payments shall continue without diminution regardless of any

bankruptcy or insolvency of the Assignor.

9. In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee-Debtor shall then assign ownership of the Annuity purchased hereunder to the Assignor, the Assignee-Debtor's liability for the Periodic Payments shall terminate, and Claimant-Secured Party's security interest in the Annuity will terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the parties hereto and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

11. The Assignee-Debtor hereby pledges and grants a security interest in the Annuity, which may be after-acquired, to the Claimant-Secured Party to the extent permitted by law in order to secure the promise of the Assignee-Debtor to make the Periodic Payments. The Assignee-Debtor shall notify the Annuity Issuer of this Agreement, and shall deliver the Annuity to the Claimant-Secured Party upon execution of this Agreement and receipt by Assignee-Debtor of the Annuity.

12. The Assignee-Debtor shall have all ownership and control rights in the Annuity, including the right to receive and retain all benefits under the Annuity, so long as the Assignee-Debtor has not failed due to insolvency or bankruptcy to make any of the Periodic Payments. All such rights shall cease, and all such rights shall vest in the Claimant-Secured Party, along with ownership of the Annuity, if any such failure to make any of the Periodic Payments is not cured by the Assignee-Debtor within 90 days after receiving notice of such failure from the Claimant-Secured Party. In such event, all obligations of the Assignee-Debtor under this Agreement shall terminate.

13. Any annuity issued will bear a stamp with the following wording:
Notice. This annuity contract has been placed in the possession of _____ (the Claimant - Secured Party) for the sole purpose of perfecting a security interest that the above named has in this contract. The above named is not the owner of, and has no ownership rights in, this contract and may not assign or otherwise use it as any form of collateral. Any attempt to assign or use as any form of collateral shall be void. Please contact the issuer for further information.

14. The Assignee-Debtor makes no representations with respect to the tax consequences of this Agreement or the adequacy of the security interest created hereby. Claimant - Secured Party agrees that he/she has been represented by an attorney or has been advised to obtain legal counsel and is not relying on any representation of Assignee-Debtor.

15. Any notice to a party hereunder shall be in writing and shall be deemed to have been given when mailed to the party 's address of record.

# PERIODIC PAYMENT ADDENDUM NO. 1

1.   <u>Periodic Payments for the Benefit of Bernice L. Maluke</u>

$1202.77 per month for life with twenty years certain starting on 11/12/2006 and $10,000 payable on 8-31-2006.

2.   <u>Periodic Payments for the Benefit of Donald R. Zimmer, II</u>

$417.65 per month for life starting on 5-19-2009 with 20 years certain.

3.   <u>Periodic Payments for the Benefit of Donald F. Zimmer</u>

$22,382.38 every 6 years for life with 5 payments certain starting on 7/10/2006.

<u>Payees of Periodic Payments</u>.   All payments for the benefit of Bernice L. Maluke shall be made to Bernice L. Maluke as Payee. Should said Bernice L. Maluke die before all said payments are made, any remaining certain payments shall be made to John Maluke, as long as he is alive.   Should said John Maluke die before all said payments are made any remaining payments shall be made to Donald F. Zimmer.

All payments for the benefit of Donald R. Zimmer, II, shall be made to Donald R. Zimmer, II as Payee. Should said Donald R. Zimmer, II die before all said payments are made, any remaining certain payments shall be made to Donald F. Zimmer, as long as he is alive.

All payments for the benefit of Donald F. Zimmer, shall be made to Donald F. Zimmer as Payee. Should said Donald F. Zimmer die before all said payments are made, any remaining certain payments shall be made to Bernice Maluke and Donald R. Zimmer, II in equal payments or to the survivor of them.

Payees retain the right to request a change in the beneficiaries of such payments in a manner acceptable to MMAC and Massachusetts Mutual Life Insurance Company. Such change will not be unreasonably withheld by MMAC.

INITIALS   Claimant-Secured-Party

_____BM   _____DFZ   _____DRZ
_____ Assignor

_____Assignee

_____Attorney for Claimant Secured Party

Exhibit B (1 Page)

### Irrevocable Guarantee of Payments

Claimant: _____

Date of Qualified Assignment or Qualified Assignment, Release and Pledge Agreement ("Qualified Assignment"): _____

Massachusetts Mutual Life Insurance Company ("Massachusetts Mutual"), a company domiciled in the Commonwealth of Massachusetts, hereby states and represents as follows:

*Whereas,* MassMutual Assignment Company, domiciled in the State of North Carolina, is an indirect, wholly owned subsidiary of Massachusetts Mutual; and

*Whereas,* MassMutual Assignment Company was created to act as assignee with respect to periodic payment liability under qualified assignments as provided in Section 130(c) of the Internal Revenue Code of 1986 (the Code) and as a third party owner of the Qualified Funding Asset under Section 130(d) of the Code; and

*Whereas,* MassMutual Assignment Company has entered into that certain Qualified Assignment with respect to the above referenced Claimant; and

*Whereas,* Massachusetts Mutual guarantees payment of the periodic payment obligations set forth in Addendum No. 1 of the Qualified Assignment;

*Now, therefore,* Massachusetts Mutual states that if MassMutual Assignment Company shall fail to make any payment as assumed under Addendum No. 1 of the Qualified Assignment, then Massachusetts Mutual, by virtue of said guarantee, shall make such payment as and when due. Said guarantee is irrevocable as to the above referenced Qualified Assignment.

This Statement is sealed and dated this _____ day of _____, 19____.

Massachusetts Mutual Life Insurance Company

By *Charles E. LeDoyen*

*Charles E. LeDoyen*
*Vice President*

PROBATE COURT OF _Warren_ COUNTY, OHIO

WARREN CO PROBATE COURT

ESTATE OF _Jennifer Noel Zimmer_ 2001 MAY 17 A 9 14 , DECEASED

CASE NO. _981282_

AMENDED ENTRY APPROVING SETTLEMENT AND DISTRIBUTION OF
WRONGFUL DEATH AND SURVIVAL CLAIMS

Upon hearing the application to approve settlement and distribution of the wrongful death and
survival claims, the Court:

☒  Approves the proffered settlement of $ _550,000.00_

☒  Orders payment of $ _3,394.10_ to be applied to decedent's funeral and
burial expenses.

☐  Orders payment of $ _____ to the fiduciary for services rendered
with respect to the wrongful death and survival claims.

☒  Orders payment of $ _19,835.44_ to the attorney for reimbursement of case
expenses and $ _183,333.33_ for attorney fees for services rendered with
respect to the wrongful death and survival claims.

☒  Orders that the net proceeds of $ _343,437.13_ be allocated
$ _343,437.13_ to the wrongful death claim and $ _0.00_
to the survival claim. The amount allocated to the survival claim shall be
considered an asset of the estate and shall be reflected in the fiduciary's
account of the administration of the estate.

☐  Finds all of the beneficiaries of the wrongful death claim are on an equal degree
of consanguinity, are adults, and have agreed how the net proceeds allocated to
the wrongful death claim are to be distributed.

☒  Orders distribution of the net proceeds allocated to the wrongful death claim to the
surviving spouse, children, parents and other next of kin, in the equitable shares shown
below, fixed by the Court having due regard for the injury and loss to each beneficiary
resulting from the death and for the age and condition of the beneficiaries.

| Name | Residence Address | Relationship to Decedent | Birthdate of Minor | Amount |
|------|-------------------|--------------------------|--------------------|--------|
| Bernice Maluke | 4060 Jenny Lane, Bethel, OH | Mother | | $234,437.13 |
| Donald Zimmer | 504 Ott Drive, Clinton, OH | Father | | $ 44,000.00 |
| Donald Zimmer | 4060 Jenny Lane, Bethel, OH | Brother | | $ 65,000.00 |

Orders that the share of:

☐ _____ a minor(s) be deposited in lieu of bond pursuant to R.C. 2111.05.

☐ _____ a minor(s) can be paid to the guardian of the estate of such minor.

☐ _____ a child(ren) be deposited in a trust for the benefit of the child(ren) until twenty-five years of age.

Authorizes the fiduciary to execute a release which, upon payment, shall be a discharge of the claim.

Orders the fiduciary and the attorney to report the distribution of the proceeds within thirty days of the date of this Entry.

Further orders _____

_____

_____

_____

IN THE COURT OF CLAIMS OF OHIO

BERNICE L. MALUKE, Admr.,          :

     Plaintiff,          :

v.          :          Case No. 2000-01023

DEPARTMENT OF TRANSPORTATION,:          :

     Defendant.          :

FILED COURT OF CLAIMS OF OHIO 2001 JUN 11 PM 2:52

## ATTORNEY GENERAL'S APPROVAL OF SETTLEMENT

     The Attorney General of Ohio pursuant to Section 2743.15(A), Revised Code, has reviewed the Settlement Agreement in the above-captioned action and hereby approves it this ___ day of _____, 2001.

              Respectfully submitted,

              BETTY D. MONTGOMERY
              Attorney General of Ohio

              DANIEL A. MALKOFF
              Assistant Attorney General, Chief
              Court of Claims Defense
              65 East State Street, 16th Floor
              Columbus, OH 43215-4220
              (614) 466-7447

42

IN THE COURT OF CLAIMS OF OHIO

BERNICE L. MALUKE, Admr., :

    Plaintiff, :

v. :     Case No. 2000-01023

DEPARTMENT OF TRANSPORTATION, :

    Defendant. :

2001 JUN 13 PM 12: 50

FILED
COURT OF CLAIMS
OF OHIO

## JOURNAL ENTRY APPROVING SETTLEMENT

The Court, being fully advised as to the premises, approves and confirms the Settlement Agreement heretofore entered into by and between the parties hereto and orders the cause be dismissed with prejudice as to all parties, all court costs to be paid by the Defendant. No interest shall be paid on the amount of the settlement.

It is further ordered that a settlement warrant of Three Hundred Twelve Thousand Dollars ($312,000.00), is to be drawn on the account of the Ohio Department of Transportation and is to be sent to the Plaintiff, Bernice L. Maluke, Admr., c/o John D. Smith, Esquire, 15 South Main Street, Springboro, Ohio 45066.

It is further ordered that a settlement warrant of Two Hundred Thirty Eight Thousand Dollars ($238,000.00) is to be drawn on the account of the Ohio Department of

Case No. 2000-01023      -2-      JOURNAL ENTRY

Transportation and is to be made payable to MassMutual Assignment Company and shall be mailed to Little, Meyers, Garretson & Associates, Ltd., 2769 Erie, Avenue, Cincinnati, Ohio 45208.

_____6/13/01_____
DATE

_____
JUDGE, COURT OF CLAIMS OF OHIO

Entry cc:

John D. Smith, Esquire
15 South Main Street
Springboro, Ohio 45066

COUNSEL FOR PLAINTIFF

Michael J. Valentine, Esquire
Assistant Attorney General
65 East State Street, 16th Floor
Columbus, OH 43215-4220
COUNSEL FOR DEFENDANT

FILED
COURT OF CLAIMS
OF OHIO
2001 JUN 13 PM 12: 50