[Cite as *Castner v. Jefferson Cty.*, 2025-Ohio-1309.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## JEFFERSON COUNTY

GEORGE CASTNER,

Plaintiff-Appellant,

v.

JEFFERSON COUNTY ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 JE 0017**

---

Civil Appeal from the
Court of Common Pleas of Jefferson County, Ohio
Case No. 23-CV-515

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Seth D. Chodosh,* Chodosh and Chodosh, LLC, for Plaintiff-Appellant and

*Atty. Richard A. Williams* and *Atty. Susan S.R. Petro,* Williams & Finkbine Co., LLC, for Defendants-Appellees.

Dated: April 11, 2025

**DICKEY, J.**

{¶1} Appellant, George Castner, appeals the entry of summary judgment by the Jefferson County Court of Common Pleas in favor of Appellees, Jefferson County and Jefferson County Water and Sewer District ("water and sewer district") (collectively "County"), in this negligence action. Appellant suffered a torn meniscus after stepping on an unsecured meter-well cover on his neighbor's property following a repair to the water line by the County. The trial court concluded the County is immune from suit because the water and sewer district was not performing a "proprietary function," as defined by R.C. 2744.01, when its employees repaired the water line.

{¶2} The resolution of this appeal turns on our interpretation of R.C. 2744.01(G)(2)(c), which reads:

> (2) A "proprietary function" includes, but is not limited to, the following:
>
> . . .
>
> (c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a municipal corporation water supply system[.]"

{¶3} The interpretation of the R.C. 2744.01(G)(2)(c) is a matter of first impression. Because Appellant has failed to show his injuries were the result of the County's maintenance of a municipal corporation water supply system, we affirm the entry of summary judgment in favor of the County.

## FACTS AND PROCEDURAL HISTORY

{¶4} Ohio is divided into 88 counties. County governments are led by commissioners and provide general government and services. Municipal corporations are the most localized division of government. A municipal corporation of less than 5,000 residents is a village while municipal corporations with 5,000 residents or more are cities.

Cities and villages may span county and township lines. The state is also divided into townships, which provide government and services for areas not within a municipal corporation.

{¶5} Title 7 of the Ohio Revised Code governs municipal corporations. R.C. 715.08, captioned "Water supply," reads in its entirety:

> Any municipal corporation may provide for a supply of water, by the construction of wells, pumps, cisterns, aqueducts, water pipes, reservoirs, and water works for the protection of such water supply and to prevent the unnecessary waste of water and the pollution thereof. Such municipal corporation may apply moneys received as charges for water to the maintenance, construction, enlargement, and extension of the water system and to the extinguishment of any indebtedness created therefor.

{¶6} A municipal corporation may, in the alterative, contract for a water supply. R.C. 743.24, captioned "Municipal corporations may contract for a water supply; contract to be submitted for a vote, reads in its entirety:

> A municipal corporation may contract with any individual or an incorporated company for supplying water for fire purposes, or for cisterns, reservoirs, streets, squares, and other public places within its limits, or for the purpose of supplying the citizens of such municipal corporation with water for such time, and upon such terms as is agreed upon. Such contract shall not be executed or binding upon the municipal corporation until it has been ratified by a vote of the electors thereof, at a special or general election. The municipal corporation shall have the same power to protect such water supply and prevent the pollution thereof as though the water works were owned by such municipal corporation.

{¶7} Chapter 6103 of the Ohio Revised Code governs county water supply systems. R.C. 6103.02, captioned "Powers of board of county commissioners," reads in relevant part:

For the purpose of preserving and promoting the public health and welfare, a board of county commissioners may acquire, construct, maintain, and operate any public water supply facilities within its county for one or more sewer districts and may provide for their protection and prevent their pollution and unnecessary waste. The board may negotiate and enter into a contract with any public agency or any person for the management, maintenance, operation, and repair of the facilities on behalf of the county, upon the terms and conditions as may be agreed upon with the agency or person and as may be determined by the board to be in the interests of the county. By contract with any public agency or any person operating public water supply facilities within or without its county, the board also may provide a supply of water to a sewer district from the facilities of the public agency or person.

{¶8}  Jefferson County is a "political subdivision" as defined by R.C. 2744.01(F). According to the affidavit of Michael Eroshevich, the Director of Sanitary Engineering at the water and sewer district, the district identifies as a "regional water and sewer district" as defined under R.C. 6119.011(U). (Eroshevich Aff., ¶ 3.)  Eroshevich further avers the water and sewer district "supplies water and sewer services to various municipalities in the region, but it is not a municipality or municipal corporation itself and it does not operate (or operate as) a municipal corporation water supply system."  (*Id.* at ¶ 4.)

{¶9}  R.C. 6119.011(U) defines "regional water and sewer district" as "a district organized or operating for one or both of the purposes described in section 6119.01 of the Revised Code . . . ."  R.C. 6119.01, captioned "Organization of district; purpose," reads in its entirety:

Any area situated in any unincorporated part of one or more contiguous counties or in one or more municipal corporations, or both, may be organized as a regional water and sewer district in the manner and subject to the conditions provided in Chapter 6119. of the Revised Code, for either or both of the following purposes:

(A) To supply water to users within and without the district;

(B) To provide for the collection, treatment, and disposal of waste water within and without the district.

{¶10} In order to form a regional water and sewer district, a petition must be filed with a common pleas court within the proposed district. After a finding that the proposed district is probably necessary and conducive to the public health, safety, convenience, or welfare, the trial court issues a preliminary order declaring the district to be organized and an independent political subdivision of the state. R.C. 6119.04(B).  Upon the filing by the district of an operating plan, the common pleas court holds a hearing on the petition, then grants a final order upon a finding the proposed district is necessary and conducive to the public health, safety, convenience, or welfare.

{¶11} The definition of "political subdivision" in R.C. 6119.011(B) includes "special water districts, including county and regional water and sewer districts."  A regional water and sewer district may be sued and impleaded in its own name with respect to its contracts or torts of its members, employees, or agents acting within the scope of their employment.  R.C. 6119.06(D).

{¶12} According to Appellant's affidavit, he was a resident of Jefferson County, Ohio residing at 273 Evergreen Terrace, Wintersville, Ohio 43935 at all times relevant to the complaint. Appellant's next-door neighbor was Ann Salinski, who resides at 201 Evergreen Terrace, Wintersville, Ohio 43935.

{¶13} Although their addresses have a Wintersville zip code, Appellant and Salinski reside outside the village's corporate limits in the city of Steubenville, Ohio. They receive their water supply from the County.  All pipes, meter well covers, and other materials related to the water supply fare are under exclusive control of and maintained solely by the County.

{¶14} In October of 2021, Appellant and Salinski noticed a loss of water pressure on their properties. That same month, County employees removed the water meter well cover on Salinski's property in order to repair the water lines on her property.

{¶15} In August of 2022, Appellant and Salinski again experienced water pressure issues.  Appellant called the County on August 23, 2022 and requested maintenance. On

August 24, 2022, County employees dug up the meter wells and removed their covers, repaired cracks in the water tap supplying the lines, and returned the meter well covers. County employees failed to ensure the meter well covers were flush with the ground, covered with dirt, or fully secured with bolts or other fasteners, as they had been prior to the initial repairs of October 2021.

{¶16} That evening, while Appellant was mowing his lawn, he stepped on the meter-well cover on Salinski's property. The unsecured meter-well cover flipped up and slipped off the meter well, causing Appellant to fall directly into the meter well hole. Appellant sustained a torn meniscus in his left knee, among other injuries to his leg.

{¶17} On December 21, 2023, Appellant filed a complaint alleging the County and three of its employees, named as John Doe defendants, were engaged in a proprietary function and subject to liability under the exceptions to governmental immunity outlined in R.C. 2744.01. On July 3, 2024, the County filed a Motion for Summary Judgment on behalf of all defendants.

{¶18} The County argued the only relevant exception to general immunity is set forth in R.C. 2744.01(G)(2)(c), which reads, "[a] 'proprietary function' includes, but is not limited to, the following: . . . (c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a *municipal corporation* water supply system." (Emphasis added.) The County reasoned the legislature, by specifically including a municipal corporation water supply system in the listed examples of proprietary functions exempted from general immunity, necessarily excluded a county water supply system from the exceptions.

{¶19} Appellant filed his opposition brief on August 15, 2024. Appellant also predicated his argument on R.C. 2744.01(G)(2)(c), asserting that any political subdivision, including a county water and sewer district, performs a proprietary function when maintaining a water supply system because it is a utility. Appellant argued the specific reference to a "municipal corporation water supply system" did not except county water supply systems from the definition of "proprietary function" based upon the twice-used phrase "including but not limited to" in the relevant subsection of the statute. Appellant further argued that two similar provisions, excepting the construction, operation, and

maintenance of "township cemeteries" and various types of detention facilities from the definition of "proprietary function," had corresponding statutory language specifically including them in the definition of "governmental function." Finally, Appellant argued the County's interpretation of the statute would produce an absurd result contrary to the clear intent of the legislature, that is, a county-operated system supplying water to a municipal corporation is immune from suit, but a municipal corporation-operated system supplying water to a municipal corporation is not.

{¶20} The trial court heard oral argument on August 23, 2024, and issued the judgment entry on appeal five days later. The trial court found the modifier "municipal corporation" specifically exempted county-operated water supply systems, which are not "municipal corporations" as defined by law. The trial court found it unnecessary to apply any rule of construction, or undertake any analysis of legislative intent, given the lack of ambiguity in the statute. Finally, the trial court rejected Appellant's argument that immunizing water departments operated by a county, but not a municipal corporation, was "nonsensical," because "[t]he legislature is free to write statutes that appear to be nonsensical" so long as they are written "unambiguously."

{¶21} This timely appeal followed.  It is important to note that the trial court entered summary judgment in favor of the John Doe defendants, however, that portion of the judgment entry is not before us in this appeal.

## STANDARD OF REVIEW

{¶22} This appeal is from a trial court judgment resolving a motion for summary judgment.  An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Before summary judgment can be granted, the trial court must determine that:  (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977).  Whether a fact is "material"

Case No. 24 JE 0017

depends on the substantive law of the claim being litigated. *Beckett v. Rosza*, 2021-Ohio-4298, ¶ 21 (7th Dist.).

**{¶23}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Doe v. Skaggs*, 2018-Ohio-5402, ¶ 11 (7th Dist.).

**{¶24}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

## SOVEREIGN IMMUNITY

**{¶25}** Prior to 1982, political subdivisions in Ohio were immune from lawsuits under the judicial doctrine of sovereign immunity. *Thacker v. Bd. of Trustees of Ohio State Univ.*, 35 Ohio St.2d 49 (1973). The doctrine of sovereign immunity was judicially abolished in Ohio in *Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26 (1982).

**{¶26}** In 1985, the Ohio legislature codified R.C. Chapter 2744, which established the statutory governmental immunity that exists today. R.C. Chapter 2744, though, does not provide governmental immunity from all legal actions against the state or its political subdivisions. Chapter 2744 provides general immunity from negligence actions to political subdivisions performing governmental and proprietary functions, then abrogates immunity with respect to specific proprietary functions.

**{¶27}** The availability of immunity is a question of law to be determined by the court prior to trial. *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992). The burden of proof is initially on the political subdivision to establish general immunity, and when established,

the burden then shifts to the plaintiff to demonstrate one of the exceptions to immunity applies. *Mullins v. Liberty Township*, 2022-Ohio-4350 (7th Dist.).

{¶28} The determination of whether a political subdivision is immune from liability involves a three-tiered analysis. The first tier requires a determination of whether the political subdivision is generally immune from liability because the alleged negligent acts of its employee occurred in connection with either a governmental or proprietary function pursuant to R.C. 2744.02(A).

{¶29} If general immunity exists, the second tier provides five exceptions to immunity, which are listed in R.C. 2744.02(B). *Doe v. Skaggs,* 2018-Ohio-5402, ¶ 18 (7th Dist.). Relevant to this appeal, R.C. 2744.02(B) provides in pertinent part, "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." R.C. 2744.02(B)(2).

{¶30} R.C. 2744.01(G), captioned "Definitions," reads in relevant part:

(1) "Proprietary function" means a function of a political subdivision that is specified in division (G)(2) of this section *or* that satisfies both of the following:

(a) The function is not one described in division (C)(1)(a) or (b) of this section [the general definition of "governmental function"] and is not one specified in division (C)(2) of this section [specific examples of "governmental functions"];

(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons.

(2) A "proprietary function" includes, but is not limited to, the following:

. . .

(c) The establishment, maintenance, and operation of a utility, including, but not limited to, a light, gas, power, or heat plant, a railroad, a busline or other transit company, an airport, and a *municipal corporation* water supply system[.]

(d) The maintenance, destruction, operation, and upkeep of a sewer system.

(Emphasis added.)

**{¶31}** If one of these exceptions is found to apply, the political subdivision loses its immunity. However, immunity may be restored at the third tier, following an analysis of the factors set forth in R.C. 2744.03(A). In the above-captioned case, the trial court ended its analysis at the second tier, having found no exception to the County's general immunity.

**{¶32}** A primary purpose of R.C. Chapter 2744 is to preserve the fiscal resources of political subdivisions. *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 353 (1994), citing *Menefee v. Queen City Metro*, 49 Ohio St.3d 27, 29 (1990). The legislative intent to limit exposure of political subdivisions to closely circumscribed categories is evident in the three-tiered inquiry, the first tier recognizing all political subdivisions performing governmental and proprietary functions enjoy immunity from suit, with limited exceptions to general immunity described at the second tier, that may nonetheless be restored at the third tier. R.C. 2744.02(C).

**{¶33}** Questions involving statutory interpretation are legal questions that we review de novo. *State v. Straley*, 2014-Ohio-2139, ¶ 9. The primary focus is the text of the statute. *State v. Beatty*, 2024-Ohio-5684, ¶ 8.

**{¶34}** When a court considers the meaning of a statute, the first step is to determine whether the statute is "plain and unambiguous." *State v. Hurd*, 89 Ohio St.3d 616, 618 (2000). The question is not "what did the general assembly intend to enact," but "what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. "The preeminent canon of statutory interpretation requires a court to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd., L.L.C. v. United States*, 541 U.S.

176, 183 (2004), quoting *Connecticut Natl. Bank v. Germain* 503 U.S. 249, 253-254 (1992). If "a statute's meaning is clear and unambiguous, the statute is applied as written." *State v. Fazenbaker*, 2020-Ohio-6731, ¶ 14.

**{¶35}** A statutory provision is ambiguous if it is "capable of bearing more than one meaning." *Dunbar v. State*, 2013-Ohio-2163, ¶ 16. Without "an initial finding" of ambiguity, "inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate. . ." *Id.*; *State v. Brown*, 2015-Ohio-486, ¶ 10.

**{¶36}** In construing an ambiguous statute, a court must ascertain the intent of the legislature. *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 604 (1999), citing *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 227 (1997). In determining intent, a court must look to the language of the statute, giving effect to the words used and not deleting words used or inserting words not used. *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419 (1999); *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97 (1991). When the language of a statute is ambiguous, a court may consider rules of construction to determine legislative intent. *Turner v. Hooks*, 2018-Ohio-556, ¶ 10; *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553 (2000). However, if "the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation," because "an unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT ON THE BASIS OF POLITICAL SUBDIVISION IMMUNITY.**

**{¶37}** Appellant concedes the County is not a municipal corporation, but contends that a water supply system is a utility regardless of the operator. Appellant relies on the phrase "including but not limited to," which appears twice in the relevant statute, to argue the statute is ambiguous, when read in its entirety. Next, Appellant contends the sovereign immunity statute specifically includes a function in the definition of

Case No. 24 JE 0017

"governmental function" when it excludes that function from the definition of "proprietary function." Finally, Appellant alleges the County's interpretation of R.C. 2744.01(G)(2)(c) would create an absurd result.

**{¶38}** At oral argument, both sides relied on common law definitions of "proprietary" versus "governmental" functions. The Ohio Supreme Court provided the following summary of the pre-statute definitions in *Greene Cty. Agriculture Soc. v. Liming*, 89 Ohio St.3d 551 (2000):

> R.C. Chapter 2744 was the General Assembly's response to judicial abolishment of the doctrine of sovereign immunity. *See Franks v. Lopez* (1994), 69 Ohio St.3d 345, 347, 632 N.E.2d 502, 504. In making the distinction between governmental functions and proprietary functions[,] a key component of R.C. Chapter 2744 when it was enacted in 1985, the General Assembly has chosen to embrace a concept that was developed through the case law of this court prior to the adoption of that chapter, even though the concept has been criticized by numerous judges and commentators. *See* Comment, The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 505-507, 510-521. Those earlier cases can be instructive in illustrating the rationale behind the distinction.

> For example, in *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 284-285, 156 N.E. 210, 211-212, a case considering the immunity of a municipality, this court stated:

> "In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, . . . the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to . . . immunity . . . . If, on the other

hand, there is no obligation on the part of the municipality to perform them, but it does in fact do so for the comfort and convenience of its citizens . . . and the city has an election whether to do or omit to do those acts, the function is private and proprietary. ["arm of sovereignty" test]

"Another familiar test is whether the act is for the common good of all the people of the state, or whether it relates to special corporate benefit or profit."

The *Wooster* court expounded that "[i]f the function being exercised is proprietary and in pursuit of private and corporate duties, for the particular benefit of the [municipal] corporation and its inhabitants, as distinguished from those things in which the whole state has an interest, the city is liable." 116 Ohio St. at 284, 156 N.E. at 211.

When a political subdivision's acts go beyond governmental functions (and when it acts in a proprietary nature) there is little justification for affording immunity to that political subdivision. "Having entered into activities ordinarily reserved to the field of private enterprise, a [political subdivision] should be held to the same responsibilities and liabilities as are private citizens." *Schenkolewski v. Cleveland Metroparks Sys.* (1981), 67 Ohio St.2d 31, 37, 21 O.O.3d 19, 24, 426 N.E.2d 784, 788. ["common benefit" test]

*Greene* at 558-559.

**{¶39}** The County argues the water and sewer district provides the water supply service by legislative imposition. To the contrary, a county is not required to provide water service to its citizens, the service is undertaken voluntarily pursuant to R.C. 6103.02. The County further argues the water supply service preserves the health of the County's citizens, and therefore constitutes a duty imposed upon the state as an obligation of sovereignty.

{¶40} Appellant counters the water service is voluntary and provided for the comfort and convenience of local citizens, and constitutes an activity ordinarily reserved to the field of private enterprise. As a consequence, the water supply service is not for the common good of all the people of the state.

{¶41} The general common law definitions of "proprietary" versus "governmental" functions, which are codified in large measure in the sovereign immunity statute, have marginal impact given the specific definition of "proprietary" function at issue in this appeal. No Ohio court has directly addressed the modifier "municipal corporation" in R.C. 2744.01(G)(2)(c). The Ninth District raised then pretermitted the issue in *Giebner v. Summit County*, 2002-Ohio-1106 (9th Dist.), because the parties in that case conceded Summit County was performing a proprietary function in operating its water supply system. The Ninth District observed in a footnote:

> Neither party has challenged the trial court's determination that Summit County was engaged in a proprietary function under R.C. 2744.01(G)(2)(c), even though Summit County was operating a *county* water supply system, while the statute refers to a "*municipal corporation* water supply system[.]" (Emphasis added.) While R.C. 2744.01(G)(2)(c) sets forth a nonexclusive list of covered utilities, none of the utilities listed, except the water supply system, is modified by the term "municipal." Nevertheless, as the parties have conceded that Summit County is engaged in a proprietary function, we need not address the issue on appeal. *Accordingly, the parties' concession has no precedential impact on this issue in future cases. Furthermore, we express no opinion as to the merits of such a claim had it been raised.*

(Emphasis added) *Id.* at n. 2.

{¶42} At oral argument, Appellant cited *Ladrigan v. Clemont County Sewer and Water Co.*, 1998-Ohio-620. Ladrigan was injured when she stepped on an improperly-installed water meter lid on her property. The Twelfth District found the maintenance of water meters involves the exercise of judgment or discretion such that Clermont County

was immune from suit at step three of the analysis. The Ohio Supreme Court reversed the Twelfth District based on its decision a year earlier in *Hill v. Urbania,* 79 Ohio St.3d 130 (1997), in which the Ohio Supreme Court found the operation of a water works and distribution system by a municipality is a proprietary function.

**{¶43}** Like Summit County in *Giebner*, *supra*, Clermont County did not assert its sovereign immunity at step two, essentially conceding it was engaged in a proprietary function. Insofar as neither the Twelfth District nor the Ohio Supreme Court interpreted R.C. 2744.01(G)(2)(c) in *Ladrigan,* we do not consider it as controlling precedent in this case.

**{¶44}** Appellant cites our decision in *East Liverpool v. Buckeye Water Dist.*, 2012-Ohio-2821 (7th Dist.), for the proposition that the operation of a water works and distribution system is a proprietary function. However, all but one of the cases we cited in *East Liverpool* predates statutory immunity. The remaining Tenth District case is distinguishable, as are the cited common law immunity cases, because the water supply systems at issue were operated by a municipal corporation. The same is true of *Hill, supra.*

**{¶45}** In *East Liverpool,* the city sought to garnish bank accounts held by Buckeye Water District ("BWD"). Pursuant to a written agreement executed in 1995, Columbiana County agreed to purchase a certain minimum amount of water from East Liverpool through 2025. When the water consumption by the County's assignee, BWD, fell below the minimum requirement, East Liverpool prevailed in a breach of contract action against both parties, then initiated garnishment proceedings against various banks in which BWD was thought to have accounts to collect on the judgment.

**{¶46}** BWD argued sovereign immunity barred East Liverpool's garnishment action. However, we opined R.C. Chapter 6119 allows a water district to be sued on its contracts. We further found R.C. Chapter 2744 does not grant immunity from contract disputes.

**{¶47}** In addition, we observed BWD, as a water district, was performing a proprietary rather than a governmental function, and the assets associated with a proprietary function were subject to garnishment. We reasoned:

Appellants argue that only property held by a political subdivision in its proprietary capacity is subject to garnishment. They contend that BWD owns all of its property in a governmental capacity and not a proprietary capacity. Therefore, they claim that no property is available for garnishment. Governmental functions are those "imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property[.]" *City of Wooster v. Arbenz*, 116 Ohio St. 281, 284, 156 N.E. 210 (1927). Proprietary functions are those voluntarily undertaken by the state for the comfort and convenience of its citizens. *Id.* at 285, 156 N.E. 210.

Appellants would have us rely on the reasoning set forth in *State ex rel. First Natl. Bank v. Botkins*, 141 Ohio St. 437, 48 N.E.2d 865 (1943), to support the conclusion that water district property is derived from a governmental function and as such may not be garnished. *State ex rel. First Nat'l Bank* held that "[p]roperty held by a municipality in its proprietary capacity, as distinguished from its governmental capacity, is subject to levy and sale after judgment." *Id.* at 442, 48 N.E.2d 865. Assuming arguendo that this holding may continue to apply even after the judicial abrogation of sovereign immunity in *Haverlack*, *supra*, we do not believe the holding supports Appellants' position in this appeal. *See, e.g.*, *Jaegers v. City of Cleveland*, 8th Dist. No. 45463, 1983 WL 5815 (Mar. 3, 1983). Appellants' reliance on *State ex rel. First Nat'l Bank* is misplaced for the simple reason that BWD, as a water district, is engaged in a proprietary activity. Hence, its property is subject to execution, levy, attachment and garnishment. We have previously held that: "The operation of a water works and distribution system is generally admitted to be performed in a proprietary capacity in this state. *City of Barberton v. Miksch*, 128 Ohio St. 169, 190 N.E. 387 [(1934)]; *Mahoning County Commissioners v. City of Youngstown*, 49 Ohio Law Abs. 186, 75 N.E.2d 724 [ (1946) ]. In other states where this rule exists levy may be made on waterworks property. *City of Hazard v. Duff*, 287 Ky., 427, 154 S.W.2d 28 [(1941)]; *see Fred Berlonti [Berlanti] & Son, Inc. v.*

*Borough of Manheim Authority*, 93 F.Supp. 437 [D.C. (1950)].” *State ex rel. Baldine*, *supra*, 1 Ohio App.2d [117,] 119, 204 N.E.2d 91 [7th Dist. 1964].

Other cases more recent than our 1964 *Baldine* opinion continue to affirm the principle that the operation of a water system is a proprietary function. “It is clear that the city of Cleveland, in the operation of its Water Department, acts in a proprietary capacity.” *Ranells v. City of Cleveland*, 41 Ohio St.2d 1, 4, 321 N.E.2d 885 (1975), fn.1. *See, also*, November *Properties, Inc. v. City of Mayfield Heights*, 8th Dist. No. 39626, 1979 WL 210535 (Dec. 6, 1979); *Seiler v. Norwalk*, 192 Ohio App.3d 331, 2011-Ohio-548, 949 N.E.2d 63; *Franklin v. Columbus*, 130 Ohio App.3d 53, 719 N.E.2d 592 (10th Dist.1998). In view of the fact that the Ohio Supreme Court, as well as various appellate courts (including this Court), treat the operation of water works as a proprietary function, we find no merit in Appellants’ argument that BWD is engaged in a governmental function and its assets may not be garnished.

*East Liverpool v. Buckeye Water Dist.,* 2012-Ohio-2821, at ¶ 50-52 (7th Dist.).

**{¶48}** It is important to note that Columbiana County was the recipient of the water service in *East Liverpool*, not the operator. All of the cases we cited in *East Liverpool* involve the operation of a water system by a municipality. The only case cited by this Court in *East Liverpool* that interpreted statutory immunity was *Franklin v. Columbus, supra.* *Franklin* was a negligence action, in which Franklin, an individual (not Franklin County), alleged that she suffered flood damage to her rental property after the city of Columbus failed to terminate her water service.

**{¶49}** The *Franklin* panel concluded the facts in that case were “strikingly similar” to the facts in *Hill v. Urbania*, 79 Ohio St.3d 130 (1997). The Tenth District summarized *Hill* as follows:

In *Hill*, the plaintiff sued a municipality under a negligence theory for damages arising out of a work-site accident in which the plaintiff, an employee of a contractor hired by the city to improve sections of the city’s

water distribution system, was injured when the city turned the water on to the section of the water line prior to the completion of a valve installation project being performed by the plaintiff. The trial court granted summary judgment for the municipality, and the court of appeals affirmed.

The Ohio Supreme Court reversed, holding that plaintiff had established a right to recover under the Act. In particular, the court noted that pursuant to R.C. 2744.02(B)(2), a city is liable for the negligent acts of its employees with respect to proprietary functions of the city. *Id.* at 133, 679 N.E.2d at 1112. Because the operation of a water system clearly constituted a proprietary function under R.C. 2744.01(G)(2)(c) and because the city clearly acted negligently in prematurely turning on the water despite being told not to, the court concluded that *"pursuant to the statute, liability attache[d] to appellee."* (Emphasis added.) *Id.* . . .

*Franklin* at 61.

{¶50} The plaintiffs in both *Franklin* and *Hill* alleged negligence on the part of employees of a municipal water supply system. As a consequence, all of the cases cited in *East Liverpool,* as well as *Hill, supra,* are distinguishable based on the fact that they involved a municipal water supply system. Although we concluded in *East Liverpool* that the water district was engaged in a proprietary function, we did not address R.C. 2744.01(G)(2)(c).

{¶51} The trial court concluded R.C. 2744.01(G)(2)(c) unambiguously exempts county water supply systems from the definition of a proprietary function, by modifying "water supply system" with "municipal corporation." Because the statute is unambiguous, the trial court refrained from inquiry into legislative intent, legislative history, public policy, rules of construction, or any other factors identified in R.C. 1.49.

{¶52} Appellant argues the specific reference to a "municipal corporation water supply system" must be read in conjunction with both "including but not limited to" clauses. Although the trial court opined the statute was unambiguous and required no interpretation, the trial court applied the canon of construction, "[e]xpressio unius est

exclusion alterius." In translation, this Latin phrase means the express mention of one thing excludes all others. *Morley v. Sheriff of Medina Cnty.*, 2022-Ohio-3469, ¶ 3 (9th Dist.)

**{¶53}** For instance, in *Hoops v. United Telephone Co. of Ohio,* 50 Ohio St.3d 97 (1990), the Ohio Supreme Court determined there was no constitutional right to a jury trial in statutory age discrimination actions brought pursuant to R.C. 4101.17 (repealed), because the claim did not exist prior to the adoption of Section 5, Article I of the Ohio Constitution. Where a statute sets forth a new civil right, the legislature may grant a concomitant right to jury trial, but need not do so.

**{¶54}** R.C. 4101.17 read in relevant part:

> If the court finds that an employer has discriminated on the basis of age, the court shall order an appropriate remedy which shall include reimbursement to him for the costs, including reasonable attorney fees, of the action, or to reinstate the employee in his former position with compensation for lost wages and any lost fringe benefits from the date of the illegal discharge and to reimburse him for the costs, including reasonable attorney fees, of the action.

**{¶55}** The statute was silent with respect to the right to a jury trial. The Ohio Supreme Court opined, "[t]he General Assembly is presumed to have known that its designation of a remedy would be construed to exclude other remedies, consistent with the statutory construction maxim of *expressio unius est exclusion alterius.*" *Hoops* at 101; *see also Kent v. Kent*, 2010-Ohio-6457, ¶ 7 (9th Dist.) ("the canon of construction expressio unius est exclusion alterius, i.e., the express inclusion of one thing implies the exclusion of the other, compels this Court to conclude that the legislature did not intend to expand the domestic relations court's jurisdiction over emancipated children simply by omitting any reference to them in the statute.")

**{¶56}** Appellant correctly argues the specific examples of "proprietary functions" provided by the statute are intended to be a non-exhaustive list, given the "including but not limited to" clauses. *Colbert v. Cleveland*, 2003-Ohio-3319, ¶ 14. Nonetheless, the specific reference to *municipal corporation* water supply systems evinces an intent to

exclude water supply systems operated by entities other than municipal corporations based on the applicable canon of construction.

{¶57} At oral argument, Appellant asserted that municipal corporation water supply systems were specifically mentioned because of their capacity to provide water service beyond their territorial limits. Appellant speculated that the legislature intended to foreclose the argument that municipal corporation water supply systems operating extraterritorially could be characterized as acting for the common good of all the state. If that was the legislature's intent, they would have specifically included "water" in the specific list of utilities, then added, "including, but not limited to, municipal corporation water supply companies."

{¶58} Next, Appellant argues that two statutory exclusions from the statutory definition of "proprietary function" – for the construction, operation and maintenance of township cemeteries and various types of detention facilities – are specifically excluded from the definition of a proprietary function, and specifically included in the definition of a governmental function. R.C. 2744.01(G)(2)(b) specifically defines a "proprietary function" as "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of a public cemetery other than a township cemetery." Correspondingly, R.C. 2744.01(C)(2)(s) specifically defines "governmental function" as "[t]he design, construction, reconstruction, renovation, operation, care, repair, and maintenance of a township cemetery."

{¶59} Similarly, R.C. 2744.02(B)(4) reads:

> political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, *but not including jails, places of juvenile detention, workhouses, or any other detention facility*, *as defined in section 2921.01 of the Revised Code.*

Case No. 24 JE 0017

(Emphasis added.) Correspondingly, R.C. 2744.01(C)(2)(h) specifically defines "governmental function" as "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code."

**{¶60}** Because there is no corresponding statutory section that recognizes the operation of a water supply system by an entity other than a municipal corporation as a governmental function, Appellant reasons the trial court erred in concluding the County enjoys statutory immunity in this case. While it is true that township cemeteries and various types of detention facilities are specifically omitted from the definition of "proprietary function" and also specifically included in the definition of "governmental function," we find nonetheless the County is immune from suit.

**{¶61}** " 'No part [of the statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative.' " *Citizens Bank, NA v. Leek*, 2018-Ohio-2813, ¶ 17 (7th Dist.), quoting *State ex rel. Carna v. Teays Valley Loc. Schl. Dist. Bd. of Edn.*, 2012-Ohio-1484, ¶ 19. Otherwise, words would be improperly eliminated from the text of the statute. *See generally Carna* at ¶ 18 (accord significance and effect to every word, phrase, sentence, and part of the statute). Appellant's interpretation renders the modifier "municipal corporation" as surplusage, as he offers no interpretation that reconciles the modifier with his argument that the operation of a water supply system is a proprietary function regardless of the operator.

**{¶62}** Appellant's final argument is predicated upon an exception to the general rule that the words in a statute should be given their plain meaning. "Statutes must be construed, if possible, to operate sensibly and not to accomplish foolish results." *Id. See also State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 2017-Ohio-8714, ¶ 22 ("The absurd result principle in statutory interpretation provides an exception to the rule that a statute should be interpreted according to its plain meaning."). The trial court did not consider this argument as it concluded a statute could create a nonsensical outcome as long as it is unambiguous.

**{¶63}** Appellant contends the trial court's interpretation accomplishes an absurd result, that is, it immunizes county water supply systems from suit while it exposes

Case No. 24 JE 0017

municipal corporation water supply systems to liability for the negligence of its employees. Appellant concedes there is no legislative history explaining the distinction. Moreover, Appellant offers no argument that there exists no distinction between municipal corporations and other water supply systems.

**{¶64}** The legislature made many similar distinctions, which arguably accomplish foolish results, in the sovereign immunity statute. For instance, the maintenance, destruction, operation, and upkeep of a sewer system is a proprietary function. In *Coleman v. Portage Cty. Engineer*, 2021-Ohio-3881, the Colemans asserted they suffered property damage as a result of upgrades to the County sewer system. The Colemans reasoned that the upgrades constituted maintenance of the existing sewer system. However, the Ohio Supreme Court opined that the upgrading of a storm-sewer system is a governmental function, because it involves construction and design. In other words, the damages to the Colemans' property would have been recoverable against the County had they resulted from the maintenance, destruction, operation or upkeep of the County sewer system.

**{¶65}** It is the function of the General Assembly to balance competing interests when enacting legislation. *McConnell v. Dudley*, 2019-Ohio-4740, ¶ 32. Second-guessing the wisdom of the legislature's policy choices in striking that balance does not fall within the scope of judicial review. *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 2006-Ohio-5512, ¶ 20. Rather, the judicial power granted by the Constitution is limited to interpretation and application of the law enacted by the General Assembly, not to rewrite it. *Houdek v. ThyssenKrupp Materials N.A., Inc.*, 2012-Ohio-5685, ¶ 29. Accordingly, we cannot "rewrite" the statute based on the unsupported claim that there exists no reason to treat municipal corporation water supply systems differently than regional water and sewer districts.

## CONCLUSION

**{¶66}** In summary, the plain language of RC. 2744.01(G)(2)(c) specifically defines a "proprietary function" as "the establishment, maintenance, and operation of a utility, including, but not limited to, . . . a municipal corporation water supply system." Based on the canon of construction that the express inclusion of one thing implies the exclusion of

the other, we find the maintenance of a water supply system that is not operated by a municipal corporation is not a "proprietary function." To conclude otherwise would render the modifier "municipal corporation" meaningless. Further, the foregoing interpretation does not produce an absurd result, as Appellant has failed to show that municipal corporations are indistinguishable from other water service suppliers. Accordingly, the entry of summary judgment in favor of the County is affirmed.

Robb, P.J., concurs.

Hanni, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Jefferson County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**